Favis Clay MARTIN,
Petitioner-Appellant,

v.

W. J. ESTELLE, Jr., Director, Texas
Department of Corrections,
Respondent-Appellee.

No. 75–3547.

United States Court of Appeals,
Fifth Circuit.

Jan. 31, 1977.

Favis Clay Martin, pro se.

William David Sims, Jr. (Court-appointed), Dallas, Tex., for petitioner-appellant.

John L. Hill, Atty. Gen., Jack B. Boone, Asst. Atty. Gen., David M. Kendall, Jr., First Asst. Atty. Gen., Joe B. Dibrell, Asst. Atty. Gen., Chief, Enforc. Div., Stephen J. Wilkinson, Asst. Atty. Gen., Austin, Tex., for respondent-appellee.

Before GOLDBERG, SIMPSON and GEE, Circuit Judges.

SIMPSON, Circuit Judge:

The district court denied Martin's petition for habeas corpus, based on appellant's contention that the Texas state courts denied him a full and fair hearing as to his competency to stand trial. This appeal ensued. We reverse the judgment below, and remand for further proceedings.

Appellant was charged with the murder of his wife with malice. Prior to trial on the merits appellant requested and was granted a jury trial on the issue of his competency to stand trial, pursuant to Tex. Crim.Proc.Code Ann., art. 46.02 (Vernon). The jury found appellant competent to stand trial. Upon his subsequent trial for murder, Martin was found guilty by a jury, and was sentenced to imprisonment for life. His conviction was affirmed on appeal. *Martin v. State,* 475 S.W.2d 265, Tex.Cr. App.1972, cert. denied, 409 U.S. 1021, 93 S.Ct. 469, 34 L.Ed.2d 312.

Appellant's federal habeas corpus petition to the district court followed. It raised the issue, among others, that he had been denied due process of law because Texas law did not permit an appeal from a judgment rendered in a competency trial. The district court denied relief and we affirmed on appeal. *Martin v. Estelle,* 5 Cir. 1974, 492 F.2d 1120, 1123, cert. denied, 419 U.S. 868, 95 S.Ct. 125, 42 L.Ed.2d 106. This Court left the door open for appellant on his denial of due process claim "if appellant was in fact placed on trial at a time when he lacked competency to stand trial". 492 F.2d at 1123.

Martin returned to the state court, seeking habeas relief on the asserted ground that his competency trial was not full, fair, and meaningful. Despite entering findings and conclusions adverse to appellant's position sometime in early 1975, the Texas trial court failed to forward the record to the Texas Court of Criminal Appeals, as required by Tex.Crim.Proc.Code Ann., art. 11.07 (Vernon). Martin, without waiting for the Texas Court of Criminal Appeals to rule, then instituted habeas corpus proceedings below, relying upon *St. Jules v. Beto,* 5 Cir. 1972, 462 F.2d 1365, 1366, where we held that "[t]he requirement of exhaustion of state remedies is a doctrine embodied in the text of 28 U.S.C. § 2243. The doctrine, however, is one of comity. . . . Comity does not require that the federal courts decline to exercise jurisdiction in the face of allegations that the state courts have been presented with the merits of a claim for habeas corpus relief and have, for one reason or another, refused or been unable to act upon the claim." [1] As noted, this appeal is from the district court's adverse ruling on the second petition for federal habeas corpus relief.

We address only the issue of whether appellant was denied due process by the Texas trial court because he did not receive a full, fair, and meaningful competency trial prior to his trial for murder.

It is a well established principle of our legal system [2] that the conviction of an

---

1. The Texas Court of Criminal Appeals belatedly denied habeas relief without written opinion on March 3, 1976, almost seven months after the district court's judgment which is the subject of this appeal.

2. " . . . Blackstone wrote that one who became 'mad' after the commission of an offense should not be arraigned for it 'because he is not able to plead to it with the advice and caution that he ought.' Similarly, if he became 'mad' after pleading, he should not be tried, 'for how can he make his defence?' 4 Blackstone Commentaries, 24." *Drope v. Missouri,* 1975, 420 U.S. 162, 171, 95 S.Ct. 896, 903, 43 L.Ed.2d 103, 113.

accused while he is not legally competent to assist in his own defense violates fundamental interests of due process. *Bishop v. United States,* 1956, 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835; *Bruce v. Estelle,* 5 Cir. 1973, 483 F.2d 1031. It is equally well established that state procedures must be adequate to protect this right, *Pate v. Robinson,* 1966, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815, and the minimum standard allowable, as implicitly dictated by *Pate,* and as applied by the Texas courts, *Townsend v. State,* Tex.Cr.App.1968, 427 S.W.2d 55, must include a separate hearing for determination of competency. Texas law adequately attempts to protect this right by providing that, where there is evidence to support a finding of incompetency to stand trial, a jury shall be impaneled, separate from the jury selected to determine guilt or innocence of the defendant, to determine defendant's competency to stand trial. Tex.Crim.Proc.Code Ann., art. 46.02, § 4(a). See *Cavender v. State,* Tex.Cr.App.1974, 515 S.W.2d 277; *Townsend v. State,* supra; *Morales v. State,* Tex.Cr.App.1968, 427 S.W.2d 51.

The reason for this concern for a separate hearing on the question of competency to stand trial is, quite obviously, so that a determination of defendant's competency can be made "uncluttered by the evidence of the offense itself." *Townsend v. State,* Tex.Cr.App.1968, 427 S.W.2d 55, 63. Such an uncluttered hearing makes it easier to determine fairly the issue of competency without introducing facts which might tend to cloud the issue at hand, "facts which alone might so stir the minds of the jury as to make difficult the exercise of calm judgment upon the question of present [incompetency]." *Ramirez v. State,* 1922, 92 Tex.

Cr.R. 38, 241 S.W. 1020, 1021. See *Lee v. Alabama,* 5 Cir. 1967 (en banc), 386 F.2d 97.

During appellant's competency trial, the prosecution continually introduced evidence material in the main only to the substantive offense with which appellant was charged.[3] This is not to infer that any mention of such facts would be prejudicial. But here highly inflammatory evidence was continually referred to before the competency jury, coupled with argument by the prosecution that appellant would be "back on the streets" if found incompetent to stand trial. These circumstances support Martin's position that he was denied a full, fair, and meaningful competency trial.[4] See *United States v. McCracken,* 5 Cir. 1974, 488 F.2d 406, 424, where this Court stated: "We do not speculate on whether the references to releasing the defendant were calculated to coerce or induce a guilty verdict, but say only that, given the facts of the case, those statements might reasonably have contributed to such a verdict." We are of course aware that "the federal courts do not sit as courts of errors and appeals when a state prisoner seeks federal habeas corpus", *Bruce v. Estelle,* 5 Cir. 1973, 483 F.2d 1031, 1040, but we are nonetheless equally aware of our responsibility "to insure that an accused obtains a fair trial by an impartial jury . . . Highly prejudicial remarks uttered by the prosecutor jeopardize the jury's deliberative process and hence infringe upon an accused's right to a fair hearing on the merits of the case." *Id.*

Also disturbing in this setting is the apparent failure to record the closing arguments of both sides at the competency trial and the court's jury instructions. Tr. of Comp. Trial, p. 216. Appellant, in his Petition for Writ of Habeas Corpus in the state court, Exhibit A, pp. 20–21, sets forth ex-

---

**3.** See, e. g., Transcript of Competency Trial, pp. 23–24, 106–108, 133–134, 136, 148–149, 208–210.

**4.** This position is buttressed by the fact that the jurors were concerned enough with the prospect of appellant being "turned loose" if found incompetent to stand trial to send a note to the trial judge during the jury's deliberations which asked:

"If found insane and committed to a mental hospital, for how long a period must [appellant] remain? If found sane and tried for the offense, what will the penalty be in regard to number of years in prison and possible parole." Transcript of Competency Trial, p. 216.

amples of comments made by the prosecution in closing argument which, if made, were seriously prejudicial. Appellant's recollections, standing alone as they do, cannot be accepted as entirely persuasive. On the other hand, without a record showing that the comments were not made, it is not possible to discount completely appellant's account of them from memory.

■ We conclude from a review of the state court transcript that appellant's competency trial was not full, fair, and meaningful for the reasons stated above. This conclusion necessitates that we provide appellant with a federal competency trial if such a trial is practicable, given the "difficulty of retrospectively determining an accused's competence to stand trial . ." *Pate v. Robinson,* 1966, 383 U.S. 375, 387, 86 S.Ct. 836, 843, 15 L.Ed.2d 815, 823. If such a determination is found to be not now possible, then the state should be permitted to retry Martin for the substantive offense, assuming, of course, his present competence to stand trial. *Drope v. Missouri,* 1975, 420 U.S. 162, 183, 95 S.Ct. 896, 909, 43 L.Ed.2d 103, 120.

■ In *Dusky v. United States,* 1960, 362 U.S. 402, 403, 80 S.Ct. 788, 789, 4 L.Ed.2d 824, 825, the Supreme Court stated that the test to determine competency to stand trial " 'must be whether [defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him.' " See *Bruce v. Estelle,* 5 Cir. 1973, 483 F.2d 1031; *Bonner v. State,* Tex.Cr.App.1975, 520 S.W.2d 901; *Reeves v. State,* Tex.Cr.App.1974, 516 S.W.2d 410; *Quintanilla v. State,* Tex.Cr. App.1974, 508 S.W.2d 647; *Sandlin v. State,* Tex.Cr.App.1972, 477 S.W.2d 870. This standard differs materially from the criteria by which trial juries are required to determine sanity at the time of a criminal act.[5]

When a defense of insanity is presented "the question is whether the defendant's mental condition at the time of the criminal act was such that he should not be held responsible for his conduct. The question of competency to stand trial relates rather to the appropriateness of conducting the criminal proceeding in light of the defendant's present inability to participate effectively . . . One who cannot comprehend the proceedings may not appreciate what information is relevant to the proof of his innocence. Moreover, many of the rights afforded the defendant in a criminal trial, such as the right to consult with counsel, the right to testify in one's own behalf, and the right to confront opposing witnesses, provide safeguards for the accuracy of the result. To exercise these rights in a meaningful way, the defendant must have some ability to confer intelligently, to testify coherently, and to follow and evaluate the evidence presented." Comment, 81 Harv.L.Rev. 454, 457 (1967).

The incomplete record before us strongly indicates that the important distinctions between the two standards—for determining competency on the one hand, and for weighing an insanity defense on the other—became impermissibly blurred in the course of the original competency hearing. In the event of another competency trial for Martin the differing standards should be kept in mind and carefully observed.

The judgment appealed from is reversed. This cause is remanded for further proceedings in the district court consistent herewith.

REVERSED and REMANDED.

GEE, Circuit Judge, specially concurring:

When confronted with the difficult task of determining whether appellant was tried without an adequate hearing in state court on the issue of his competency to stand trial, we turn for guidance to the test of a "full and fair hearing" set forth in *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), and to our application of

---

5. For the current Fifth Circuit rule for submission to a jury of an insanity defense, see *Blake v. United States,* 5 Cir. 1969, en banc, 407 F.2d 908.

that test to state competency hearings in *Bruce v. Estelle,* 483 F.2d 1031 (5th Cir. 1973).

Much of the evidence introduced at appellant's competency hearing related to his state of mind at the time of the offense rather than at the time of trial. Appellant complains of prejudice from the admission of these details of the crime and suggests that the jury did not understand as of when it was to determine his competency. He also asserts he was prejudiced by the prosecutor's closing remarks that unless he were found competent to stand trial he would be "back on the streets" menacing society.

In *Bruce v. Estelle, supra,* we determined that when a competency determination is collaterally attacked "it is the duty of a federal court to initially review the state court proceedings for the purpose of resolving whether they were conducted in a manner to fairly adduce *the facts surrounding a petitioner's claims.*" 483 F.2d at 1038 [emphasis added]. The facts surrounding a claim of incompetency are the claimant's ability at time of the hearing to consult with his lawyer with a reasonable degree of rational understanding and his "rational as well as factual understanding of the proceedings against him." *Dusky v. United States,* 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960). But appellant's hearing produced little evidence of his then current abilities and much about his state of mind at the time of the crime, which was at most indirectly relevant to the issue of ability to consult with a lawyer and to understand the proceedings contemplated. Thus, the competency hearing was not a fair one under the fundamental rule that the court must actually reach and decide the issues of fact presented by the defendant.[1] In *Bruce v. Estelle, supra,* we held that the issue of criminal responsibility had been so confounded with the issue of competency to stand trial as to prevent the factfinder from focusing on the crucial factors necessary to determine competency. 483 F.2d at 1039. The confusion resulting from the introduction of evidence of appellant's state of mind at the time of the offense also suggests that here the wrong constitutional standard was followed—the question of petitioner's ability to know right from wrong at the time of the crime is distinct from his ability to understand the proceedings and assist in his defense. *Townsend* holds that application of the wrong constitutional standard likewise vitiates an evidentiary hearing.[2]

In finding the state determination of competency meaningless, I disregard entirely petitioner's allegations of prejudice from the prosecutor's closing remarks. Because these arguments are nowhere recorded, we cannot give weight to the "recollections" in petitioner's brief, recollections so curiously reminiscent of the "back on the street" closing remarks condemned in *Bruce.* Without a record, this court cannot know if the remarks come from petitioner's memory or were invented after a reading of *Bruce.*

Because the competency hearing below so plainly failed to find the relevant facts and so thoroughly confused the standard of criminal responsibility with that for competency to stand trial, I would not even require that petitioner address the hurdle required by *Bruce* to be cleared before this court may consider a claim of incompetence in a habeas corpus proceeding:

> Courts in habeas corpus proceedings should not consider claims of mental incompetence to stand trial where the facts are not sufficient to positively, unequivocally and clearly generate a real, substantial and legitimate doubt as to the mental capacity of the petitioner to meaningfully participate and cooperate with counsel during a criminal trial. While the factual pattern will vary from case to case, the instant case illustrates the standard which should be met to sustain such a

1. "There cannot even be the semblance of a full and fair hearing unless the state court actually reached and decided the issues of fact tendered by the defendant." 372 U.S. at 313–14, 83 S.Ct. at 757.

2. *Id.,* at 315 n. 10, 83 S.Ct. 745.

claim, *viz.* a history of mental illness, substantial evidence of mental incompetence at or near the time of trial supported by the opinions of qualified physicians and the testimony of laymen. The burden is on the petitioner to prove his allegations; such proof should be clear and convincing.

483 F.2d at 1043.

Although in *Townsend* the remedy for a meaningless hearing was a new evidentiary hearing, I have deep misgivings about the majority's decision to remand to the district court for a *nunc pro tunc* competency hearing if practical. Although our circuit has countenanced such *nunc pro tunc* competency hearings,[3] the Supreme Court has recognized the futility of a competency hearing conducted even one year after the fact,[4] and it is now five years since petitioner's trial. I would, therefore, follow the Court's recommended course of action and grant this writ, subject to the holding of a new trial if petitioner be found presently competent at a full and fair hearing.

---

**3.** *Bruce v. Estelle, supra.*

**4.** *Pate v. Robinson,* 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966); *Dusky v. United States,* 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960).