Favis Clay MARTIN, Petitioner-Appellee,

v.

W. J. ESTELLE, Jr., Director, Texas Department of Corrections, Respondent-Appellant.

No. 77–2726.

United States Court of Appeals, Fifth Circuit.

Nov. 16, 1978.

Rehearing Denied Dec. 13, 1978.

Godbold, Circuit Judge, concurred in result and filed opinion.

John L. Hill, Atty. Gen., David M. Kendall, Jr., First Asst. Atty. Gen., Jack Boone, Joe B. Dibrell, Asst. Attys. Gen., Austin, Tex., Thomas A. Curtis, Potter County Dist. Atty., Steve Kattner, John Byron Reese, Asst. Dist. Attys., Amarillo, Tex., for respondent-appellant.

Ronald D. Nickum, Amarillo, Tex. (Court-appointed), for petitioner-appellee.

Before GEWIN, GODBOLD and MORGAN, Circuit Judges.

GEWIN, Circuit Judge:

For a third time petitioner Martin comes before this court. The course of his protracted efforts to overturn his 1970 conviction for murder is detailed in our most recent opinion in this case, *Martin v. Estelle*, 546 F.2d 177 (5th Cir. 1977). There, Martin appealed from the district court's denial of his petition for a writ of habeas corpus on the grounds that the state court's failure to provide him with a fair competency hearing prior to his murder trial denied him due process of law. We found for Martin and remanded his case to the district court with instructions to "provide appellant with a federal competency trial if such a trial is practicable." *Id.* at 180. Pursuant to this instruction the district court, on June 14, 1977, held a hearing on the question of Martin's competency at the time of his June 8, 1970, trial in Texas state court. The court found that it was unable to retrospectively determine Martin's competency and ordered that the writ be issued subject to the state's right to retry him. After careful review of the record on appeal we remand to the district court for further proceedings consistent with this opinion.

■ Martin was accorded a hearing by the state court on his competency to stand trial, but the hearing itself was found to be inadequate. In these circumstances this court has held that the case should be remanded to the district court for a determination of whether a meaningful retrospective competency hearing can be conducted. *See Bruce v. Estelle*, 483 F.2d 1031 (5th Cir. 1973). If the lower court finds that this question can be answered affirmatively then a hearing must be conducted to ascertain petitioner's competency at the time of his original trial.[1] At this hearing the burden is on the petitioner to prove his

incompetency by a preponderance of the evidence. *Bruce v. Estelle*, 536 F.2d 1051, 1058–59 (5th Cir. 1976). If the court finds that a meaningful competency hearing cannot be conducted, then of course, the writ must issue.

■ The test to be applied in determining the question of meaningfulness is whether the "quantity and quality of available evidence is adequate to arrive at an assessment that could be labelled as more than mere speculation." 536 F.2d at 1057. Although the factors involved in arriving at a decision regarding the meaningfulness of a retrospective competency hearing must necessarily vary from case to case, this court has taken notice of certain types of data which are essential to the decision-making process. Medical evidence, such as expert testimony from psychiatrists who have examined the defendant near the time of trial or testimony based upon hospital records reflecting defendant's mental history, generally provide sound material for reconstruction of defendant's mental state. *See id.; United States v. Makris*, 535 F.2d 899, 904–05 (5th Cir. 1976). In addition to expert testimony, the testimony of laymen who have interacted with the defendant contemporaneous with trial can also provide data of equal weight with that derived from expert testimony. *See* 536 F.2d at 1057. Finally, the transcript of the trial itself or, as in the instant case, the competency hearing, can be used to assist the court in forming an accurate picture of defendant's mental state at the time of trial.

■ In answering the threshold question whether a meaningful retrospective hearing on competency can be held, the lower court must take the initiative to insure that all relevant evidence comes before it. The

---

1. The test for determining competency to stand trial as established in *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) is:

whether he [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him.

court, for example, may wish to enlist the aid of experts in making its determination, as in *Bruce v. Estelle*, where the court appointed two psychiatrists "to examine Bruce, furnish a medical report and testify at the 1974 retrospective hearing." 536 F.2d at 1054. At the evidentiary hearing held in *Bruce* the experts agreed that a meaningful hearing could be conducted if "pertinent legal and medical records were combined with current medical evaluation to produce a hindsight picture of Bruce's mental condition in 1965." *Id.* at 1055. Also the court may find that there are a sufficient number of expert and lay witnesses who have examined or observed the defendant contemporaneous with trial available to offer pertinent evidence at a retrospective hearing. *See United States v. Makris*, 398 F.Supp. 507, 511–12 (S.D.Tex. 1975), *aff'd* 535 F.2d 899 (1976).

Our examination of the proceedings conducted by the district court in this case reveals that the court failed to follow the procedure described above for deciding questions of retrospective competency in that it made no initial determination of meaningfulness. The record shows that on March 17, 1977, the question of whether a retrospective competency hearing was practical was argued before the court. (R.II, p. 10).[2] Apparently no decision was reached at that time because at a hearing on June 8, 1977, to consider petitioner's motion for a continuance in the competency proceedings, in reply to petitioner's question whether a decision had been reached the court answered:

> Well, sir, it was decided to the extent to go ahead and have a hearing. I think it is going to have a very definite bearing on whether or not you were competent, though. *It is intermixed in my mind, the fact that whether it is practical and whether I can determine competency at*

*this late date are all one and the same ball of wax.*
PETITIONER: Then, you haven't actually decided, then, that it is practical to have a retrospective hearing?
THE COURT: I have reserved the right to make that determination.
PETITIONER: Oh, I see.
THE COURT: And even at this coming hearing.

. . . . . .

THE COURT: In other words, if I, after hearing all of the evidence, if I decide that I just can't determine this competency question now, I would think that the mandate of the Fifth Circuit requires you to go back for a new trial, yes, sir. Does that answer your question?
PETITIONER: Almost.
THE COURT: Well, I didn't—I don't mean to evade the answer, but the question is still open, you are correct on that, as to whether it is practical to have a trial.

(R.II, pp. 10–11). (Emphasis supplied)

The court finally decided to hold a hearing to consider evidence with the right reserved to the petitioner to bring in additional witnesses should the court find that the evidence presented demonstrated petitioner's competence. At this proceeding the court committed its second error by placing the burden of proving Martin's competency to stand trial upon the state,[3] since as stated above, the habeas petitioner at a federal *nunc pro tunc* competency hearing has the burden of proving his incompetency. *See* 536 F.2d at 1058–59. Until the petitioner demonstrates his incompetency to stand trial the state is required to adduce no proof of competency.

It is our opinion that the lower court's failure to make an initial determination of the meaningfulness of conducting a hearing

---

2. "R.II" refers to the record in the June 14, 1977, federal competency hearing.

3. At the June 14, 1977, hearing the court stated: "I believe the burden is on the State, if you will call your first witness." (R.II, p. 20).

on Martin's retrospective competency and its improper allocation of the burden of proof at the hearing it did conduct are fatal to its decision. The erroneous allocation of the burden of proof is particularly serious since we believe that it clearly led to the district court's finding that "there was nothing which established petitioner's competency to stand trial on June 8, 1970." We therefore remand this case to the district court with instructions to first make a determination of whether a meaningful hearing regarding Martin's competency at his original trial can be conducted. If the court finds that such a hearing can be held then the hearing should proceed with the burden on the petitioner to prove his incompetence at the time of trial.

REVERSED and REMANDED WITH DIRECTIONS.

GODBOLD, Circuit Judge:

I concur in the result but with reluctance.

I attach the district judge's memorandum and order as an exhibit to this opinion.

This case implements *Pate v. Robinson*,[1] which held that due process is violated if the trial court fails to afford an adequate hearing to a defendant on the issue of his competency to stand trial when evidence or events at trial raise a bona fide doubt of whether he is competent to stand trial. *See Nathaniel v. Estelle*, 493 F.2d 794 (CA5, 1974); *Chenault v. Stynchcombe*, 546 F.2d 1191 (CA5), *cert. denied*, 434 U.S. 878, 98 S.Ct. 231, 54 L.Ed.2d 158 (1977); *Davis v. Alabama*, 545 F.2d 460 (CA5), *cert. denied*, 431 U.S. 957, 97 S.Ct. 2682, 53 L.Ed.2d 275 (1977). In the second appeal in this case, *Martin v. Estelle*, 546 F.2d 177, (CA5), *cert. denied*, 431 U.S. 971, 97 S.Ct. 2935, 53 L.Ed.2d 1069 (1977) (*Martin II*), we concluded that this is a *Pate*-type case.[2] That holding is the law of the case.

On remand from *Martin II* the district judge was required to determine whether it was currently possible to have a "meaningful" or "adequate" *nunc pro tunc* determination of Martin's trial competency. Such a threshold finding was required by *Lee v. Alabama*, 386 F.2d 97, 108 (CA5, 1967) (en banc), which initially implemented *Pate* in this circuit:

This court concludes after careful consideration of the Supreme Court's decision and opinion [in *Pate v. Robinson*] that it will be the duty of the trial court, under such circumstances, [*i. e.*, that the state is unable to demonstrate that petitioner's trial competency was determined before his trial, an issue already settled in this case by *Martin II*'s holding that the competency trial was held but was not within constitutional limits] to decide whether it can conduct an adequate hearing on the question of Lee's competency to stand trial in 1943. If it cannot, it will be under the obligation to set aside the judgment of conviction and remand the case to the state courts for a new trial at which time it will, of course, be open to Lee to have an adequate hearing on his then mental capacity to stand trial.

My brothers accept that Judge Woodward made such a finding; Judge Gewin's opinion says (Mss. op. p. 2):

The court found that it was unable to retrospectively determine Martin's competency and ordered that the writ be issued subject to the state's right to retry him.

Indeed District Judge Woodward's finding "Under the record before this Court, the difficulty of retrospectively determining MARTIN'S competence to stand trial seven years ago is overwhelming" can mean nothing else. The district judge's findings are not surprising, considering the evidence

---

1. 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966).

2. Martin had a competency trial, as provided by state law, prior to his merits trial. *Martin II* held that the competency trial was not full, fair

and meaningful because of highly inflammatory evidence brought before the competency jury coupled with highly prejudicial remarks made by the prosecutor. 546 F.2d at 179.

which, upon examination, he found was available to him. This evidence is discussed below.

As best I can tell, my brothers are concerned that in reaching his conclusion that retrospective determination of trial competency was impossible, Judge Woodward may have confused the shifting responsibilities and consequences that are involved in the difficult task of applying *Pate* and *Lee.* Because of their concern, I will quickly walk through the procedural steps involved in a *Pate-Lee* type case, using the rubric of burden of proof.

(1) *The trigger.* A convicted state prisoner who asserts a due process violation consisting of his having been denied an adequate hearing on trial competency is not automatically entitled to a retrospective federal court examination of his trial competency. He must establish that he had no trial competency hearing or that it was inadequate. He must bring forward facts generating substantial doubt of his trial competency; the duty of the federal habeas court to make a further inquiry into the constitutional issue only arises where the facts "positively, unequivocally and clearly generate a real, substantial and legitimate doubt as to the mental capacity of the petitioner to meaningfully participate and cooperate with counsel during a criminal trial." *Bruce v. Estelle,* 483 F.2d 1031, 1043 (CA5, 1973) (*Bruce II*). He must bring forward evidence that there were matters known to the trial judge—pre-trial or trial pleadings, evidence at the trial or other events known to the judge—which raised at that time a bona fide doubt of his trial competence. *Nathaniel,* 493 F.2d at 797; *Davis,* 545 F.2d at 464. In this case, the trigger was sprung by *Martin II.*

(2) *The inquiry into "meaningfulness."* Varying terminology has been used to describe the initial inquiry which, under *Lee,* must be made by the habeas court, for example: "to decide whether it can conduct an adequate hearing" (*Lee* ); to determine if a "federal competency trial . . . is

practicable" (*Martin II* ). The phrase "adequate hearing" has been paraphrased many times as "meaningful hearing," and the threshold inquiry as "meaningfulness." The terminology is slightly misleading. The proposed hearing, possibly to be conducted to try to reach a *nunc pro tunc* determination of trial competency, is not an end in itself; it is a means for attempting to reach a satisfactory judicial determination of an issue (and the issue is one intrinsically difficult to decide). "Meaningfulness" and "adequacy" do not relate to such matters as whether a court reporter will be available at the hearing, if held, or whether petitioner will have counsel or the right to subpoena witnesses and cross-examine. Rather they are shorthand descriptions of the question which the court must ask itself, and must answer: "Do there appear to be presently available to the court tools of principled decision that will produce a retrospective determination of trial competency sufficiently accurate to be judicially acceptable?" As Judge Gewin notes, Judge Clark, writing for this court, has stated it this way: "the court . . . must decide for itself if the quantity and qualify of available evidence [is] adequate to arrive at an assessment that could be labeled as more than mere speculation." *Bruce v. Estelle,* 536 F.2d 1051, 1057 (CA5, 1976), *cert. denied,* 429 U.S. 1053, 97 S.Ct. 767, 50 L.Ed.2d 770 (1977) (*Bruce III* ). "[T]he meaningfulness inquiry is essentially a legal one which the court must make for itself." *U. S. v. Makris,* 535 F.2d 899, 905 (CA5, 1976), *cert. denied,* 430 U.S. 954, 97 S.Ct. 1598, 51 L.Ed.2d 803 (1977) (*Makris II* ).

Factors to be considered in deciding whether to go forward with a hearing at which the court will attempt to determine trial competency *nunc pro tunc* include whether there is available contemporaneous psychiatric testimony of the prisoner's condition as of his trial; the recollection of nonexperts, including the trial judge, who observed the defendant during trial; the length of time since trial; the transcript of the trial itself; and any conflicts between

lay and expert testimony, which themselves may have so dimmed the prospects of an accurate assessment that a retrospective hearing is meaningless. *Makris II,* 535 F.2d at 904–05.

If the means appear to be at hand to make a reliable *nunc pro tunc* determination, the court moves on to the merits of trial competency. If the means appear not to be at hand, the writ must issue. As *Pate* spells out, since the basis for defendant's constitutional claim is that he was entitled at trial to an adequate hearing on trial competency, if he was denied such a hearing, and it is not possible to have a sufficiently reliable *nunc pro tunc* determination, then defendant is entitled to the writ. Of course, defendant may be retried if he is presently competent to stand trial.

It is self-evident that once a petitioner has triggered constitutional inquiry, *see* part (1), above, the burden is upon the state to come forward and show to the judge that the tools of rational decision are available.[3] There can be no doubt of this. *Pate, Lee* and our caselaw since *Lee,* command that if a meaningful retrospective determination is not possible (and the petitioner has carried the initial burden described in (1) above), the writ must issue. *Martin II* said this in its mandate to Judge Woodward.

This court in *Lee* did not tell the district court what mechanical procedures it should use in deciding whether it was practicable

to make a retrospective determination of competency. Nor has this court in its cases since *Lee* directed district courts what means they should employ to gather and get before them for examination the available evidence on trial competency in order to determine if, as Judge Clark put it, "the quantity and quality of available evidence [is] adequate to arrive at an assessment that could be labeled as more than mere speculation." It seems obvious to me that in this process of information gathering the trial judge has discretion to use the full range of his court's procedures.[4] He may employ pre-hearing procedures, such as requiring the parties to file available transcripts, summaries of available evidence, depositions, lists of witnesses and the like. As a substitute or as a supplement for this he can order a hearing in open court and admit oral testimony and evidence for the purpose of making his initial determination. Alternatively, if he wishes, he can order a single hearing at which he will gather information on the basis of which he can rule on the initial question, and if he finds that reliable *nunc pro tunc* determination is possible proceed to decide the merits of trial competency, and if he finds that reliable decision is not possible issue the writ. The procedure of reserving judgment on a threshold question while continuing to receive evidence is familiar to our adjudicatory system.[5]

I assume that Judge Gewin's opinion does not mean to imply that a judge may not use

---

3. Perhaps it is more palatable to speak of the consequences of an absence of evidence upon which a rational *nunc pro tunc* decision can be based, rather than of failure to meet a burden of coming forward with evidence. Whatever the semantics, the consequences are clear. The writ must issue.

4. This court itself has not hesitated to participate in the accumulation of data to be considered by the district judge in making his threshold determination. *See Bruce v. Estelle,* 483 F.2d 1031, 1042–43 (CA5, 1973) (*Bruce II*).

5. This was the procedure followed in *Lee* on remand. The district court set the matter for hearing on the issues of whether there had been an adequate state determination of Lee's trial competency, and if not, whether it could

conduct an adequate and meaningful hearing on the question of trial competency, and if so, whether Lee was in fact mentally competent at trial. *Lee v. Alabama,* 291 F.Supp. 921, 922 (M.D.Ala.1967), *aff'd,* 406 F.2d 466 (CA5), *cert. denied,* 395 U.S. 927, 89 S.Ct. 1787, 23 L.Ed.2d 246 (1969). Before the hearing the state informed the court that Dr. J. S. Tarwater, who was connected with the Alabama State Mental Hospital and had served on a commission which had considered Lee's sanity in 1942, was living and available to testify but was out of the country, and it moved for a continuance until his return. The motion was denied, and the hearing was conducted. 291 F.Supp. 921; transcript and record in the files of the United States District Court for the Middle District of Alabama, *Lee v. Alabama,* CA–2585–N.

a hearing as a means of gathering information to enable him to decide whether a meaningful *nunc pro tunc* determination is possible, or that he is forbidden to have a single hearing at which he will consider the initial determination and the merits (if reached). If so, the opinion would be wrong. What is vital is not the means by which information is made available to the court—no hearing, one hearing, or two hearings. The vital prerequisite is that there be a determination, first in sequence, of whether there is available evidence on which an acceptably reliable decision can be made.

(3) *The merits of trial competency.* Indisputably the petitioner carries the ultimate burden of proving that he was incompetent at trial. As I read Judge Woodward's memorandum opinion, he did not indicate otherwise. The statement in the opinion, "there was nothing which established petitioner's competency to stand trial on June 8, 1970," read in context, is part of the judge's process of assaying the available evidence in order to decide the threshold issue of whether the tools for rational *nunc pro tunc* decision were at hand.[6] Judge

Woodward examined the evidence and found especially significant the testimony of Martin's trial attorney and a psychiatrist. He assayed the time lapse of seven years, the inability of the psychiatrist who had examined Martin two and a half months before trial to express a positive opinion concerning Martin's competency as of the trial date (March 25, 1970); the psychiatrist's opinion that Martin had been a chronic schizophrenic since childhood; the psychiatrist's testimony that Martin became psychotic when examined; the testimony of Martin's attorney tending to show incompetency at the time of trial. In this assay, after concluding that the psychiatrist's testimony was not sufficiently positive and certain, he noted, quite correctly, that there was not made available to him any evidence, lay or expert, of *competency* at the time of trial. In the end, about all the information available to the judge and bearing on *the issue of competency as of the trial date* was the lay testimony of Martin's lawyer that as of trial the petitioner was *incompetent.* In his view this slender evidence was not a sufficient predicate on which to make a decision on the issue of

---

The state put in evidence a transcript of the 1942 sanity hearing. Testimony was taken from the person who had been clerk of the state trial court in 1942, describing petitioner's demeanor at trial. He testified to the nonavailability of petitioner's trial counsel, and material law enforcement officers, who were dead, and the trial judge. He identified newspaper reports concerning the 1942 sanity inquiry, and these were introduced into evidence. The petitioner himself testified.

The court recessed the hearing and directed that Dr. Tarwater's testimony be taken by deposition and that he produce his records for the deposition. His deposition was taken and filed. Therein he testified on the issues whether there could be a meaningful hearing of Lee's competency to stand trial in 1943 and whether Lee was in fact mentally competent at trial. 291 F.Supp. at 926.

On this combination of pre-hearing, hearing, and post-hearing information, the court entered its finding on the threshold issue of meaningfulness:

"On the issue of whether this Court can at the present time conduct an adequate and meaningful hearing on the question of Lee's competency to stand trial on October 27,

1943, under the peculiar facts that have been developed since the remand of this case this Court can and does conclude *that a meaningful hearing can be conducted and has now been conducted on that question.*"

*Id.* at 926 (emphasis added). The court, in the same opinion and order, reached the ultimate question of trial competency and found that Lee was mentally competent to stand trial. *Id.* at 927.

On appeal, 406 F.2d 466, we affirmed the meaningfulness conclusion as not clearly erroneous, giving consideration to the transcript of the 1942 hearing, the testimony of Lee and the state court clerk at the hearing, and the testimony of Dr. Tarwater by deposition.

It is obvious that this gathering of information by pre-hearing, hearing and post-hearing, followed by a decision on the issue of meaningfulness and then a decision on the merits, was both good sense and good law.

6. Perhaps it would have been better if the judge had said "tending to show competency," but this seems an unnecessary insistence on semantics.

trial competency that would be anything more than speculation. He embraced this view in the specific finding to this effect, quoted above.

My brothers are troubled by the statement of Judge Woodward made at the opening of the hearing that the burden was upon the state. The statement was correct, although if one insists it might have been explained more fully. Since he had reserved the meaningfulness issue until hearing, the burden was upon the state to come forward with evidentiary matter establishing that a sufficiently reliable retrospective determination was possible. Unless and until it came forward, *Pate* required that the writ issue. The judge's statement was not directed to the ultimate burden of proof of trial competency, an issue that he never reached.

Judge Gewin's opinion states that the district court "held a hearing on the question of Martin's competency at the time of his . . . trial." This overlooks that Judge Woodward had reserved the meaningfulness issue. Presumably Judge Gewin's statement is based upon the second paragraph of the district judge's opinion, in which he says that "a trial was held to determine whether MARTIN, at the time of his trial . . ., had sufficient present ability to consult with his lawyer" (etc.). This shorthand characterization does not mention the reserved threshold issue. Nevertheless, when the district judge's opinion and order is read in full and fairly, it is clear that Judge Woodward employed both the proper procedures and the correct standards. This court does not find that his conclusion on meaningfulness is not supported by sufficient evidence. Thus, there is no necessity of remanding the case to require the district judge to say again, in magic words, what he already has said with acceptable clarity. Alternatively, this court could assay the evidence which Judge Woodward found was available to him; if we did, we would be forced to conclude, as he did, that it does not afford sufficiently

reliable tools for a principled *nunc pro tunc* decision.

Since my colleagues are unwilling to give this case the decent burial which it now should have, I must agree reluctantly to let the district judge lick the calf again.

## EXHIBIT

### MEMORANDUM AND ORDER

On July 8, 1975, this Court entered order denying and dismissing the application for writ of habeas corpus filed by FAVIS CLAY MARTIN in this case. The United States Court of Appeals for the Fifth Circuit reversed the trial court and remanded the case with instructions to provide MARTIN with a federal competency trial if such a trial is practicable and if determination is made that such trial is not now possible then the State should be permitted to retry MARTIN for the substantive offense. *Martin v. Estelle,* 5th Cir., 1977, 546 F.2d 177.

Counsel was appointed to represent petitioner and on June 14, 1977, a trial was held to determine whether MARTIN, at the time of his trial in state court on June 8, 1970, had sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he had a rational as well as factual understanding of the proceedings against him.

Portions of the transcription of the trial proceedings were admitted into evidence and the Court heard testimony from twelve witnesses. The testimony of at least two of the witnesses was most significant. The thrust of the testimony of the attorney who had represented petitioner at his 1970 sanity hearing and the ensuing trial was that petitioner would respond to instructions from the attorney, but that MARTIN could not tell him anything that aided in the defense of the case. All of the information which the attorney had gathered came from other persons and from records. Inquiries about significant facts addressed to peti-

tioner by the attorney were unrewarding because MARTIN could not answer the questions. In his opinion at the time of the trial in 1970, MARTIN did not have sufficient present ability to consult with the attorney with a reasonable degree of rational understanding.

A medical psychiatrist, whose expert qualifications were stipulated, also testified at the hearing. He had examined MARTIN on March 25, 1970, approximately two and one-half months prior to the trial. As the interview progressed, MARTIN became psychotic when the subject of his former wife, whom he was charged with killing, was raised. After that subject was abandoned, petitioner was able to settle down and talk about his past history. The psychiatrist was of the opinion that MARTIN had been a chronic schizophrenic since he was a teenager and has had periods of psychoses. On the date that he interviewed him on March 25, 1977, he found no sustained period during which MARTIN would have been unable to assist the attorney in preparation of his defense. The psychiatrist was able to develop answers to his inquiries by approaching the question for which he sought an answer again and again from different angles and, eventually, he got the information. In his opinion, had the attorney interviewed the petitioner on the same date that the psychiatrist saw him on March 25, 1970, and had the attorney persisted in his questions, petitioner would have been able to consult with the attorney with a reasonable degree of rational understanding.

Although the psychiatrist testified that he saw nothing on March 25, 1970, which would have prevented MARTIN from rationally consulting with the attorney, he could not make a positive statement on the basis of reasonable medical probability that MARTIN was in fact able to consult with counsel on that date nor on the date of trial two and one-half months later.

Although the state produced evidence from the psychiatrist which tended to indicate that MARTIN could have been competent to stand trial on March 25, 1970, and to indicate that he was competent in October, 1970, at a time when a civil action, seeking to place custody of his child with State Department of Welfare was conducted, there was nothing which established petitioner's competency to stand trial on June 8, 1970. In fact, the testimony that petitioner was competent on March 25, 1970, was at best conjectural.

The difficulty of establishing competency retrospectively has been recognized by the Supreme Court of the United States. *Dusky v. United States*, 1960, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824. In that case, only one year since trial had elapsed. In the instant case, the interval is seven years. Under the record before this Court, the difficulty of retrospectively determining MARTIN'S competence to stand trial seven years ago is overwhelming.

The writ of habeas corpus shall issue on the present conviction, but the State of Texas shall be permitted to retry MARTIN for the substantive offense, assuming, of course, his present competency to stand trial.

LET JUDGMENT BE ENTERED ACCORDINGLY.