UNITED STATES of America

v.

Glenn COLE

No. CRIM.A.02–173.

United States District Court,
E.D. Louisiana.

Oct. 20, 2004.

Shaun G. Clarke, Liskow & Lewis, New Orleans, LA, for Glenn Cole, defendant.

## ORDER AND REASONS

FELDMAN, District Judge.

Before the Court is the issue of the defendant's competency to stand trial. For the reasons that follow, the Court finds the defendant is not competent to stand trial.

### I.

Glenn Cole and two others were arrested and charged in May 2002 with carjacking and related misconduct. Cole is currently charged in a fourth superseding indictment with conspiracy to commit carjacking, carjacking, conspiracy to use a firearm in a crime of violence, and using a firearm in a crime of violence. Upon the suggestion and request of Cole's counsel, and with the government's con-

sent, the Court ordered a psychologist, Dr. Jill Hammer, to conduct a psychological examination of Cole to determine his competency to stand trial. In her evaluation, Dr. Hammer concluded that Cole "lacked the capacity to understand the proceedings against him and lacked the capacity to assist his defense." Upon a joint motion by the parties, the Court then remanded Cole to the custody of the Attorney General for further competency evaluation and treatment. Because of the time involved in determining his competency to stand trial, Cole's case was severed. The two others have pleaded guilty.

While at the Federal Bureau of Prisons, in Butner, North Carolina, Cole was evaluated by Dr. Robert G. Lucking. Dr. Lucking concluded that Cole was competent to stand trial, provided the Court could move at a slower pace and make other "accommodations to compensate for Mr. Cole's limited intellectual ability." If, however, the Court could not make the accommodations recommended, Dr. Lucking was of the opinion that Cole was incompetent to stand trial. Thus, two opinions confronted the Court that were, at best, inconsistent. Faced with this dilemma, the Court ordered still another evaluation of the defendant; both sides agreed. The Court appointed Dr. Rennie W. Culver to conduct the evaluation, expressly requesting Dr. Culver to also consider the possibility that Cole was malingering. The Court then granted counsel's motion to appoint, on Cole's behalf, Dr. Hammer to conduct another psychological evaluation and Dr. Thompson, a psychiatrist, to conduct his evaluation of the defendant.

On August 25, 2004, the Court held a competency hearing at which Drs. Hammer, Culver, Lucking, and Thompson all testified. Of special concern for the Court is that none of the experts testified that

Cole is fully competent to stand trial. Dr. Lucking and, initially, Dr. Culver, testified that Cole is competent to stand trial only if the Court makes accommodations that would construct a trial model that would ensure Cole's understanding of the proceedings. Drs. Hammer and Thompson testified unequivocally that Cole is not competent to stand trial. None of the experts found conclusively that Cole is malingering, although Dr. Culver commented that Cole is "possibly" malingering.

At the competency hearing, the government, for the first time, tried to use a pair of letters that it claimed Cole had written while at Orleans Parish Prison. The government asserted that the letters are evidence that Cole is malingering. The government also asserted that Arthur Banks, one of Cole's co-defendants, and Cindy Cole, the other co-defendant's sister, were prepared to testify that Glenn Cole can read and write and that he planned on tricking all four of the experts into pronouncing him incompetent so that he could escape the charges against him.[1]

When shown the proffered letters by the government, Dr. Culver cautiously contradicted his own report, and expressed the new belief that Cole could be a malingerer and might be competent to stand trial without any of the accommodations he had previously recommended. Dr. Lucking, on the basis of the so-called Cole letters and other information he was not shown when he performed his initial evaluation, testified that, if Cole is malingering, he could be competent because he probably functions on a higher level than previously believed. However, Dr. Lucking was unable to say that Cole actually is malingering and felt that he didn't have enough information to make that determination.

## II.

■ The Court finds that Cole is incompetent to stand trial. Not one of the four experts that the parties used in this case diagnosed Cole as competent after fully examining him. At best, Drs. Lucking and Culver opined that Cole would be competent if certain accommodations were made for him. However, no one could rationally describe what those accommodations might be and how the Court might determine if they were working: How was one to know Cole was understanding the proceedings? Who would explain to him what was happening? How often? What role would his counsel play in advising about Cole's understanding, given that counsel believed Cole was not competent? If Cole did not understand some phase of the trial, how would it be repeated for him?

■ To meet the Constitutional standard for competency to stand trial, the defendant must have: (1) the ability to consult with his lawyer with a reasonable degree of rational understanding; and (2) a rational as well as factual understanding of the proceedings against him. *Mata v. Johnson*, 210 F.3d 324, 329 n. 2 (5th Cir. 2000) (citing *Godinez v. Moran*, 509 U.S. 389, 396, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993)); *Moody v. Johnson*, 139 F.3d 477, 481 (5th Cir.1998). Once the defendant's competency has been placed in sufficient doubt, as it has here, the Court must conduct a "full, fair, and meaningful" hearing on the matter to satisfy the defendant's due process rights. *Martin v. Estelle*, 546 F.2d 177, 179 (5th Cir.1977). At this hearing, the government bears the burden of proving, by a preponderance of the evidence, that the defendant is capable

---

1. Neither the Court nor counsel for Cole were ever made aware of the so-called letters or proposed testimony until the government's offer at the hearing. And none of the material or information had been shared with any of the defendant's evaluating experts.

of rational decision making. *United States v. Hutson*, 821 F.2d 1015, 1018 (5th Cir. 1987). It is helpful to draw attention to the fact that the government has, during all these past many months, not objected to having competency examinations or a competency hearing.

In this case, the government has failed to carry its burden. The only expert to suggest that Cole might be competent without the need for accommodations was Dr. Culver, and that was only after being confronted by evidence that the government hastily presented for the first time and sought to put in evidence at the competency hearing without corroborating its reliability or showing good cause why it was not discovered and disclosed months earlier. This so-called evidence is not a suitable ground upon which to base an expert opinion. Documents that lack established authenticity are not "reasonably relied upon by experts" in this field. Fed. R.Evid. 703. The government's efforts were too little, too late. Its excuses for lateness were not credible.

The idea that Cole could be malingering is by no means a new one. In February 2004, the Court specifically ordered Dr. Culver to consider the possibility that Cole was malingering. The government knew this. In the six months since, no one, including Dr. Culver, has been able to conclusively diagnose malingering. And the government provided no assistance. Now, a year and a half after Cole's competency was first placed in issue and at least six months after the specific question of malingering was first raised, the government claims to have recently-discovered evidence to prove that Cole is malingering, evidence that Cole's experts were not given during their lengthy deliberations, and

that was given to the others only the day before the competency hearing.

■ The government asserts that the new evidence and witnesses satisfy the new trial standard for newly discovered evidence. The Court disagrees. In order to merit a new trial, (1) newly discovered evidence must clearly produce a result different from the one reached in its absence, and (2) the party must exercise due diligence in discovering the evidence. *See Goldstein v. MCI WorldCom*, 340 F.3d 238, 257 (5th Cir.2003).

In this case, the impact of the government's "new evidence" is dubious. The documents are supposedly written by Glenn Cole but there was no reliable evidence that Cole wrote them. The government's attempted use of testimony by Arthur Banks is, for this Court, unreliable; Banks is a convicted felon with an extensive criminal record who received a deal from the government for his testimony. Cindy Cole's testimony suffers from a similar deficiency. Her brother is Cole's other co-defendant. This testimony is countered by four experts.

Moreover, the Court is especially not convinced that due diligence on the part of the government would not have revealed this "new evidence" much earlier, and all involved would not have been confronted with it in a desperate last-ditch effort to prevail. The idea that Cole might be malingering has been seriously present for a considerable amount of time. Surely the government, with due diligence, with all its resources, should have pursued possible testimony on this subject by Cole's co-defendants and family members and brought it and the letters to the Court's attention long before the date of hearing.[2]

2. At the competency hearing on August 25, 2004, the Court, faced with the government's unexpected announcement of this new evi-

dence, requested proffers. The witnesses' two affidavits were not actually obtained until September 23 and 24, only a couple of days

In order to answer the question of Cole's competency, this Court has presided over eighteen months of discovery, culminating in a hearing at which the several experts testified after intense inquiries about Cole. The Court has fully considered this matter, including the possibility of malingering. The end result remains the same, despite the government's protestations about newly discovered evidence: None of the experts, after examining Cole, unequivocally found him competent to stand trial, nor did any of the experts unequivocally find that he is malingering, even when specifically instructed to consider that possibility. None of the experts know how or could suggest how the Court would implement the recommended trial accommodations without which Cole would not be competent. The government's late theater about new evidence is poor drama. The government seems to believe that the conclusions gleaned from a year and a half of expert examination will be changed by two lay witnesses and two unauthenticated documents, if they are just given a little more time. The government, along with this Court, has had a year and a half to look into Cole's competency. At some point, a decision must be made. That time is decidedly now. The Court heard the experts testify to an important consistency at the hearing: Glenn Cole is not competent to stand trial as is. The Court is given no other choice but to agree with the experts, and finds Glenn Cole is not competent to stand trial.[3]

before briefs were due. The government's cavalier handling of this issue is patent.

**3.** The government protests that Cole could be released to commit more serious crimes. This Court does not discount that serious risk. All the more reason to remind the government of its responsibility to carry its burden of proof under the law.