Terry Allen BOUCHILLON,
Petitioner–Appellee,

v.

James A. COLLINS, Director Texas Department of Criminal Justice, Institutional Division, Respondent–Appellant.

No. 89–1418.

United States Court of Appeals,
Fifth Circuit.

Aug. 7, 1990.

C. Rex Hall, Jr., Charles A. Palmer, Asst. Attys. Gen., Jim Maddox, Atty. Gen., Austin, Tex., for respondent-appellant.

Terry Allan Bouchillon, Lubbock, Tex., pro se.

Alan Rich, Dallas, Tex. (court-appointed), Johnson & Gibbs, for petitioner-appellee.

Before GOLDBERG, REAVLEY and HIGGINBOTHAM, Circuit Judges.

GOLDBERG, Circuit Judge:

James A. Collins, Director of the Texas Department of Corrections, ("The State"), seeks review of an order from the United States District Court for the Northern District of Texas granting Terry Allen Bouchillon's, ("Bouchillon"), petition for a writ of habeas corpus. The district court issued the writ on the grounds that Bouchillon was mentally incompetent when he pled guilty to one count of aggravated robbery, and that his attorney's failure to investigate Bouchillon's competency prior to entering his plea constituted ineffective assistance of counsel. We AFFIRM.

## FACTS

Petitioner, Terry Allen Bouchillon, is a Vietnam veteran with a long history of mental problems and substance abuse. He has been repeatedly diagnosed as suffering from Post–Traumatic Stress Disorder–Delayed.[1] Although it appears that the first serious manifestations of mental illness appeared after he returned from Vietnam and stemmed from his experiences there, his treatment records indicate that his experiences in Vietnam may have only exacerbated existing psychological problems. Bouchillon's childhood was marked by abuse and neglect. His parents were apparently alcoholics and gave up their children to the custody of orphanages. When he was 12, Bouchillon ran away from the orphanage and was taken in by a prostitute with whom he lived for a year and who he says sexually abused him.

One does not need to be a psychiatrist or a seer to know that, if nothing else, such a background provides a fertile soil in which to develop mental problems and from which some degree of social maladjustment or antisocial behavior might be predicted.[2] Bouchillon's case proves the rule, rather than the exception.

## PROCEEDINGS BELOW

Bouchillon was indicted in state court in Lubbock, Texas on charges of aggravated robbery and aggravated kidnapping. The court appointed counsel to represent him, as he had indicated that he was unable to afford retained counsel. Pursuant to a plea bargain to drop the kidnapping charge, Bouchillon pled guilty to the robbery charge and was sentenced, on December 30, 1982, to twenty years in prison. He did not appeal this judgment but rather, filed a state petition for habeas corpus alleging that he had been insane at the time of the offense, incompetent at the time of his plea, and that he had been

---

1. Post–Traumatic Stress Disorder–Delayed is a clinically recognized psychological disorder which involves a person's reaction to severe stress. Apparently, it has only recently been identified and classified as a distinct disorder. The "delayed" appellation refers to the delay in the manifestations of the symptoms.

2. The court most emphatically does not mean to imply that maladjustment or mental problems are the inevitable product of such a background. We take judicial notice however of the fact that such a background increases the probability of these problems. Were this fact not documented by numerous commentators, scientists, etc. we might come to this conclusion on our own given the frequency that similar histories are recited and documented before this court in felony cases and habeas petitions involving felony offenses.

denied effective assistance of counsel because his counsel had not investigated either his competency or his insanity defense.

It is undisputed that the Petitioner received no hearing on the issue of his competency prior to the plea proceedings. Nor did Bouchillon's counsel arrange for his client's competency to be evaluated by a psychologist or psychiatrist. Nevertheless, the convicting court denied Bouchillon's state habeas petition without holding an evidentiary hearing on the matter. It relied primarily on its evaluation of Bouchillon's demeanor at trial and upon the record of his responses at the plea proceeding to find that he was competent. The Texas Court of Criminal Appeals affirmed. Bouchillon then filed a petition for habeas corpus in federal court. His petition was initially denied with prejudice, but that determination was modified by this court into a denial without prejudice for failure to exhaust state remedies.

Having failed on his first attempt, Bouchillon re-filed his state petition. However, this second petition was interpreted by the state court as a request for medical treatment for his condition, not as a petition for habeas, and it was also denied. This decision was affirmed by the Texas Court of Criminal Appeals. Once again, Bouchillon filed a federal petition for habeas corpus. This time an evidentiary hearing was held, the transcript of which forms the bulk of the record of this appeal. At this hearing Bouchillon presented evidence of his incompetency through his medical records, expert testimony, and affidavits, from his two sisters and a fellow inmate, attesting to his mental problems. The State's only witness was Bouchillon's trial counsel, who testified that he found Bouchillon lucid and able to assist in his own defense and that he therefore judged him to be competent.

The State presented no expert testimony of its own.

The District Court again denied relief on the grounds that Bouchillon had not exhausted his state remedies because the State had not heard the evidence produced in the federal proceeding. For a third time, Bouchillon filed his state petition to the convicting court, this time attaching the transcript and exhibits from the federal evidentiary hearing. Again, the state court, without conducting an independent hearing, and relying primarily on the evidence of Bouchillon's demeanor at the plea colloquy, denied relief. This holding was affirmed by the Texas appellate court.

Finally, Bouchillon filed the instant petition alleging three grounds for relief: (1) that he was denied the affirmative defense of insanity, (2) that he was incompetent to plead at the time of his guilty plea, and (3) that he had been denied effective assistance of counsel because his attorney failed to investigate his competency to stand trial or the viability of an insanity defense. This time the District Court found that he had exhausted his state remedies and referred the matter to a magistrate for a hearing on the merits.[3]

The magistrate rejected the petitioner's first claim on technical grounds. However, he found that Bouchillon had been incompetent in fact at the time of his plea, and that his attorney's conduct represented ineffective assistance of counsel in violation of the Sixth Amendment. The District Court adopted the findings of the magistrate and granted Bouchillon's petition subject to the State's right to re-try him within 120 days. The State appeals this ruling.

## DISCUSSION

### I. Incompetence in Fact

---

**3.** In the second proceeding, the magistrate notified the parties of his intention to adopt, for purposes of this third petition, absent any objections, the proceedings of the evidentiary hearing held on January 16, 1987. The parties were given 30 days within which to notify the court if they had any objections, or if they wished to present additional evidence. Neither elected to respond. As a result, the transcript of the previous hearing was adopted by default. We note that had the State chosen, when it had the opportunity, to present its own expert testimony, it might have aided us in our decision and valuable judicial resources might have been conserved.

Due process [4] prohibits the conviction of a person who is mentally incompetent. *Bishop v. United States*, 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835 (1956). "This constitutional right cannot be waived by the incompetent—by guilty plea or otherwise...." *Carroll v. Beto*, 421 F.2d 1065, 1067 (5th Cir.1970). While a guilty plea may only be attacked on the basis that it was not knowing and voluntary,[5] "[I]t is contradictory to argue that a defendant may be incompetent, and yet knowingly or intelligently 'waive' his right[s]...." *Pate v. Robinson*, 383 U.S. 375, 384, 86 S.Ct. 836, 841, 15 L.Ed.2d 815 (1966). *See e.g., Bolius v. Wainwright*, 597 F.2d 986, 988, n. 3 (5th Cir.1979); *Malinauskas v. United States*, 505 F.2d 649, 655 (5th Cir.1974).

The test of incompetency is whether a defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402, 80 S.Ct. 788, 788, 4 L.Ed.2d 824 (1960) (citation omitted). *See e.g., Acosta v. Turner*, 666 F.2d 949, 954 (5th Cir.1982); *Lokos v. Capps*, 625 F.2d 1258, 1261 (5th Cir.1980); *Bolius v. Wainwright*, 597 F.2d 986, 988 (5th Cir.1979).

■ In a federal habeas proceeding stemming from a state court conviction, the burden is on the petitioner [6] to prove, by a preponderance of the evidence, that he was incompetent in fact at the time of the plea. *Thompson v. Blackburn*, 776 F.2d 118 (5th Cir.1985) (burden "extremely heavy," *id.* at 124, citing *Johnson v. Estelle*, 704 F.2d 232, 238 (5th Cir.1983), *cert. denied*, 465 U.S. 1009, 104 S.Ct. 1006, 79 L.Ed.2d 237 (1984)). *See also Martin v. Estelle*, 583 F.2d 1373, 1374 (5th Cir.1978) (petitioner must prove incompetence by preponderance of the evidence); *Zapata v. Estelle*, 585 F.2d 750, 752 (5th Cir.1978) (en banc) (burden of proof is preponderance, not clear and convincing); *Bruce v. Estelle*, 536 F.2d 1051, 1059 (5th Cir.1976) (higher burden would raise due process concerns).

■ It is undisputed that Bouchillon suffers from Post–Traumatic Stress Disorder.[7] It is also clear from the record and the testimony at the evidentiary hearing that, in all probability, Bouchillon suffered from this disorder both at the time of his offense and at the time of his plea.[8] What is more

---

4. Petitioner does not allege that the trial court failed, upon notice or *sua sponte*, to hold a competency hearing thereby denying him procedural due process. *See, Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966). Instead, he makes a collateral attack on the guilty plea claiming it is invalid because he was incompetent in fact. For a discussion of the difference between an allegation of a procedural error and a collateral attack with respect to the issue of competence see *Lokos v. Capps*, 625 F.2d 1258, 1261–64 (5th Cir.1980).

5. *McMann v. Richardson*, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970).

6. There is a circuit split on the issue of the allocation of the burden of proof. The Fifth Circuit adheres to a rule placing the burden on the petitioner in cases reviewing state court convictions. By contrast, the Second and Seventh Circuits place this burden on the state. *See Brown v. Warden, Great Meadow Correctional Facility*, 682 F.2d 348, 353–54 (2d Cir.1982), *cert. denied* 459 U.S. 991, 103 S.Ct. 349, 74 L.Ed.2d 388 (1982); *Phillips v. Lane*, 787 F.2d 208, 210, 215 (7th Cir.1986), *cert. denied* 479 U.S. 873, 107 S.Ct. 249, 93 L.Ed.2d 173 (1986). This is also the allocation followed with respect to habeas review of *federal* criminal convictions. *United*

States v. Hutson, 821 F.2d 1015, 1018 (5th Cir. 1987). Thus, in the Fifth Circuit we have given a different allocation of the burden of proof in these cases depending upon whether the criminal prosecution was state or federal. The allocation used in federal convictions may be the sounder one constitutionally where at trial the burden would have been on the state to prove that the defendant was competent. In addition, cases involving habeas petitions from federal convictions are often cited to as precedent in cases arising out of state court convictions and vice versa. "A different appellate standard for state habeas cases could compound the confusion in this already difficult area." *Bruce v. Estelle*, 536 F.2d 1051, 1059 (5th Cir.1976) (referring to standard of review, but equally applicable to this situation).

7. The State acknowledges in its brief that Bouchillon suffers from this disorder. Appellant's Brief, p. 4.

8. The record indicates that not only did Dr. Goggin, the expert witness who testified at the evidentiary hearing, make this diagnosis, but, more significantly, the doctors at the prison made this same diagnosis shortly after his incarceration. In addition, the medical records of

to the point is whether this disorder rendered him unable to understand the proceedings against him or to assist in his own defense.

Not all people who have a mental problem are rendered by it legally incompetent. According to the record, the nature of Bouchillon's disorder is such that he apparently goes through lucid and competent intervals, as opposed to episodes of "numbing" and blackouts during which he cannot be expected to exercise judgment or reason. Moreover, these episodes of diminished capacity would not necessarily be obvious to the layman.

As previously noted, the state court, in reviewing Bouchillon's petition, relied al-

most exclusively on the evidence of Bouchillon's demeanor at the plea proceeding and the testimony of his trial counsel[9] to hold that he was competent.[10] While the findings of fact in a state proceeding on this question are entitled to a presumption of correctness in the federal habeas proceedings pursuant to 28 U.S.C. § 2254(d),[11] in this case the State held no evidentiary proceedings—either at the time of the plea or after the fact.[12] Its factfinding was limited to observing Bouchillon's demeanor, and, as the Supreme Court indicated in *Pate*, demeanor is not dispositive. *Pate, supra,* 383 U.S. at 386, 86 S.Ct. at 842.[13] "[T]he existence of even a severe psychiatric defect is not always apparent to lay-

his treatment prior to the crime in question, describe him as having many of the same symptoms, although his disorder is not given the same label. These records, going back many years, taken with his sisters' affidavits which relate to the period since his discharge from the army, are consistent in their description of his problems. It is therefore reasonable for the Magistrate to have agreed with petitioner's witness in finding that it was more probable than not that he had been suffering from the syndrome at the time of his plea.

**9.** With respect to the testimony of Bouchillon's attorney we reiterate our observation in *Bolius.* "[T]he testimony of trial counsel cannot be treated as coming from a totally disinterested witness." 597 F.2d at 989.

**10.** The state convicting court wrote that all the documentation in support of Bouchillon's writ was either known to the petitioner at the time of his pleading or was "already submitted [,] *with the exception of the transcripts of the January 16, 1987, federal evidentiary hearing, a 1987 psychologist's report and affidavits from his sisters.*" Order of Oct. 12, 1987, p. 206, Vol. II, Record Excerpts. (emphasis added) The convicting court thus neatly summarized virtually *all* of the evidence in support of Bouchillon's claim, none of which had been before the court until the third petition. Nevertheless, the court surprisingly found this evidence "cumulative only and insufficient to raise any new issues of fact." *Id.*

**11.** Twenty-eight U.S.C. § 2254(d) states:
In any proceeding instituted in a Federal Court by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, *a determination after a hearing on the merits of a factual issue, made by a state court* of competent jurisdiction in a proceeding to which the applicant for the writ and the State or an officer or

agent thereof were parties, evidenced by a written finding, written opinion, or other reliable and adequate written indicia, shall be presumed to be correct, unless the applicant shall establish or it shall otherwise appear, or *the respondent shall admit*—[that one of the eight exceptions apply].
28 U.S.C.A. § 2254(d) (West 1977 & Supp.1990) (emphasis added).
However, the determination of competency is not solely a "factual issue," but rather is a mixed question of fact and law. *Drope v. Missouri,* 420 U.S. 162, 174–75, 95 S.Ct. 896, 905–06 (1975); *U.S. v. Makris,* 535 F.2d 899, 907 (5th Cir.1976), *cert. denied* 430 U.S. 954, 97 S.Ct. 1598, 51 L.Ed.2d 803 (1976). *See also Maggio v. Fulford,* 462 U.S. 111, 118–19, 103 S.Ct. 2261, 2264–65, 76 L.Ed.2d 794 (1983) (White, J., *concurring*). This limits the application of the statute in this context.

**12.** The State initially conceded in its brief that § 2254(d) did not apply. However, it reversed its position in oral argument. In spite of this change of heart, the State fails to convince us that we should apply § 2254(d) where the state court did not have a separate proceeding since the statute plainly addresses itself to those situations. Furthermore, even if we were to apply § 2254(d), it seems to us that one or more of the exceptions relating to sufficiency of evidence or a lack of hearing on the merits would also apply, given the lack of a state proceeding on this issue.

**13.** Furthermore, as the Court wrote in *Dusky,* it is not enough that the defendant is "oriented to time and place" or that he has "some recollection of events." *Dusky, supra,* 362 U.S. at 402, 80 S.Ct. at 788. The convicting court placed some reliance on what it termed Bouchillon's "selective recall." Record Excerpts, Vol. III, p. 210.

men." *Bruce, supra* at 1059. "One need not be catatonic, raving or frothing, to be [legally incompetent.]" *Lokos, supra*, 625 F.2d at 1267.

The only hearing at which evidence was presented of Bouchillon's psychological evaluations and history was that held by the District Court, *nunc pro tunc*, in connection with Bouchillon's second habeas petition. By the time the federal hearing was held, a little over five years had passed since Bouchillon's plea. Because Bouchillon was not given a competency evaluation at the time of the pleading and because the transcript of a plea proceeding is necessarily briefer than that of a trial, there is very little evidence available that was obtained contemporaneously with his pleading.[14] Nevertheless, the psychologist who examined Bouchillon for purposes of this petition testified that, in his opinion, Bouchillon was incompetent at the time of his pleading. While that opinion was not offered based on a contemporaneous examination of Bouchillon [15] it was rendered in the context of his diagnosis of Bouchillon's condition. That diagnosis is consistent with

Bouchillon's record of treatment in prison and his previous history of mental problems. Thus, the District Court ruled that Bouchillon was incompetent in fact at the time of his guilty plea.

The District Court's findings of fact are entitled to this court's deference unless they are "clearly erroneous." *Bruce, supra*, 536 F.2d at 1058.[16] While it is not entirely clear to us that Bouchillon's disorder rendered him unable to understand the charges against him or to assist his attorney,[17] we cannot reverse the District Court's ruling merely because the evidence arguably supports a different result and we might have ruled differently.[18] In this case we are not prepared to say that the District Court's ruling was so unsupported by the evidence as to be clearly erroneous. Therefore, we affirm.

## II. Petitioner was Denied Effective Assistance of Counsel

The standard for evaluating effective assistance of counsel is set out in the Supreme Court's decision in *Strickland v.*

---

**14.** It is difficult for us to say that there was sufficient evidence available (or offered) to make the *nunc pro tunc* hearing a meaningful one as required by our decision in *Martin v. Estelle*, 583 F.2d 1373, 1374 (5th Cir.1978). As we held there, "the question of meaningfulness is whether the 'quantity and quality of available evidence is adequate to arrive at an assessment that could be labelled as more than mere speculation.'" *Id.* (citing *Bruce v. Estelle*, 536 F.2d 1051, 1057 (5th Cir.1976)). However, were we to decide that there was insufficient evidence to make a meaningful *nunc pro tunc* determination of Bouchillon's competency, it would have the same effect as our ruling today. "If the court finds that a meaningful competency hearing cannot be conducted, then of course, the writ must issue." *Martin, supra*, 583 F.2d at 1374.

**15.** The court is free to disregard the testimony of expert witnesses (such as psychologists) as to competency in favor of that of lay persons *if there is sufficient evidence to justify doing so.* See e.g., *Maggio, supra* 462 U.S. at 117–18, 103 S.Ct. at 2264–65 (trial court discounted testimony of psychiatrist, that defendant was incompetent, in light of other evidence, including substantial testimony from defendant and no history of mental illness); *White v. Estelle*, 669 F.2d

973, 977–78 (5th Cir.1982) (where incompetence was a jury question, a reasonable juror could have believed State's witnesses, jailer and deputy sheriff, that defendant was competent, rather than three experts who testified that he was not).

**16.** Although where a constitutional violation is charged the findings are subjected to a "hard look," "[a]s long as a federal court has initially engaged in independent factfinding, this court need not review *de novo*." *Bruce* at 1058. This is the combination "clearly erroneous hard look" standard enunciated by Chief Judge Clark in *Bruce v. Estelle*, 536 F.2d 1051 (5th Cir.1976).

**17.** It appears that if he was not having a blackout or experiencing "numbing" he would have been competent. Furthermore, the description of the "numbing" episodes sounds as if it would also be consistent with garden-variety depression or apathy. We venture to guess that if every accused were to be adjudged incompetent who was rendered depressed or apathetic at finding himself incarcerated and indicted on felony charges, few would ever be tried.

**18.** It may be that, as Chief Judge Clark wrote in *Bruce, supra*, "[u]nder the circumstances [he] proved as much as he could about his medical

*Washington.*[19] Under *Strickland,* Bouchillon must show; (1) that his attorney's performance fell below "an objective standard of reasonableness" as measured by professional norms, (*Strickland,* 466 U.S. at 688, 104 S.Ct. at 2065); and, (2) that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068. The central purpose in examining any claim of ineffective assistance of counsel is to ensure that the defendant was accorded due process, "not to grade counsel's performance." *Id.* at 697, 104 S.Ct. at 2069. Thus, the *Strickland* decision does not require us to analyze these criteria in any particular order; if we can dispose of this case on the prejudice prong the *Strickland* Court urged that we do so. For this reason, and because Bouchillon's claim that he was incompetent in fact provides the basis for his claim of prejudice, we examine the prejudice issue first.

**A. Prejudice**

■ Our ruling on the issue of incompetence in fact disposes of the prejudice prong of the *Strickland* test because if Bouchillon was incompetent his plea was ineffective and he was prejudiced by its entry.[20] In this case, unlike in *Strickland,* evidence was presented that Bouchillon has a clinically recognized, mental disorder. Furthermore, the psychologist testified that due to this disorder, Bouchillon was incompetent to plead guilty. With respect to the prejudice prong of a claim of ineffective assistance of counsel, Bouchillon need only demonstrate a "reasonable probability" that he was incompetent, "sufficient to undermine confidence in the outcome." *Strickland* at 694, 104 S.Ct. at 2068. This is a lower burden of proof than the prepon-

derance standard. Thus, even if Bouchillon were to fail to prove his incompetency by a preponderance of the evidence, it is still possible that he raised sufficient doubt on that issue to satisfy the prejudice prong of his ineffective assistance of counsel claim. While we noted above that the evidence arguably supports a different result under a preponderance standard, we are confident that it meets the "reasonable probability" standard. Thus, Bouchillon has met the prejudice prong of the *Strickland* test.

**B. Professional Standards**

■ The Court in *Strickland* cautioned that, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland, supra* at 689, 104 S.Ct. at 2065. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* On the other hand, as we noted in *Profitt v. Waldren,* "[t]his measure of deference ... must not be watered down into a disguised form of acquiescence." 831 F.2d 1245, 1248 (5th Cir.1987).

In *Strickland* the Supreme Court held that a convicted defendant must specify the particular act or omission with which his counsel is charged. *Id.* 466 U.S. at 690, 104 S.Ct. at 2066. That act or omission must then be evaluated in light of the *particular facts and circumstances* of the case.[21] In this case Bouchillon charges that his trial counsel erred in neglecting to do any investigation regarding Bouchillon's medical history after he was informed that Bouchillon had been institutionalized for mental problems several times in the

condition and certainly enough to carry his burden." 536 F.2d at 1063.

**19.** 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

**20.** A claim of incompetence does not lend itself very well to the "outcome" test in *Strickland* because it does not turn on the validity of the

result vis a vis guilt or innocence. Since to convict an incompetent person is a *per se* due process violation, guilt or innocence of the offense charged is irrelevant.

**21.** In making this determination the state court's conclusion that counsel rendered effective assistance is not a factfinding binding on the federal court pursuant to 28 U.S.C. § 2254(d), because the conclusion is a mixed

past.[22] As the Court noted in *Strickland,* "[C]ounsel has a duty to make *reasonable* investigations...." *Id.* at 691, 104 S.Ct. at 2066. "[A] particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.*

At the federal evidentiary hearing, Bouchillon's trial counsel did not deny that Bouchillon told him he had mental problems, had been institutionalized, and was on medication. He claimed however that the discussion of Bouchillon's mental problems arose because Bouchillon wanted to assert an insanity defense and that he advised Bouchillon that "it was difficult to prove an insanity defense in Lubbock, Texas."[23] To drive this point home he told Bouchillon about one of his recent cases in which ten members of the jury had voted for a guilty verdict despite the testimony of numerous experts, including the well-known Dr. Grigson, that his client was insane. He admitted that this story may have "persuaded Mr. Bouchillon a little bit" to abandon the insanity defense and accept the plea.[24] (Trans. p. 68) He made no phone calls, did not request Bouchillon's medical records, did not talk to witnesses regarding Bouchillon's mental problems— in short, he did no investigation of any kind because he said that Bouchillon appeared rational.

Our decisions in *Profitt v. Waldron*[25] and *Beavers v. Balkcom*[26] control this case. In *Profitt* the defendant had been adjudicated insane by an Idaho court and ordered committed. He escaped from the mental hospital and eventually made his way to Texas where he raped a woman. He was later caught and brought to trial for this offense. Prior to the trial Profitt was examined by the State's doctor and by a court-appointed psychiatrist. Both judged him competent to stand trial. Profitt's attorneys knew that Profitt had escaped from an Idaho mental institution but they abandoned any investigation concerning why he had been sent there after receiving the court-appointed psychiatrist's report. Had they not done so, they would have discovered the prior adjudication of insanity. Furthermore, based on the reports that their client was competent, they decided not to pursue an insanity defense— their client's only defense. Profitt was convicted and sentenced to 75 years in prison.

On appeal of Profitt's habeas petition the State argued to this court that Profitt's attorneys were absolved of any further duty to investigate because they had a court-appointed psychiatrist evaluate Profitt. We did not agree and concluded that this failure to investigate "clearly [fell] below the level of customary skill and knowledge required of attorneys when only one defense is available." *Profitt* at 1249. The State also argued that the attorneys' decision not to pursue an insanity defense was a tactical decision under the circumstances and thus entitled to the court's deference. We disagreed, noting that we could not see that there was *any* advantage to be gained by abandoning their client's sole defense. *Id.*

---

question of fact and law. *See Strickland,* 466 U.S. at 698, 104 S.Ct. at 2070.

**22.** This fact also differentiates this case from *Strickland* in that in that case there was no evidence that counsel had any reason to believe a psychological evaluation would do any good— indeed, the reverse. This highlights the importance of looking at the "particular facts and circumstances" as urged by the *Strickland* Court because this case is otherwise factually very similar to that one. We are therefore not prepared to adopt Petitioner's request of a prophylactic rule on the prejudicial effect of this failure to investigate, but rather rely on the case-by-case analysis called for in *Strickland.*

**23.** Transcript of federal evidentiary hearing, p. 69, Record on Appeal, Vol. III.

**24.** Compare the "persuasion" which Bouchillon's attorney engaged in to that in *Thomas v. Lockhart,* 738 F.2d 304 (8th Cir.1984), where defense counsel intimated to his client that local racial prejudice would make trying to put on a defense a futile gesture even though the client claimed he was innocent. Assuming *that it exists,* local bias against a claim of insanity does not justify a failure to investigate that issue.

**25.** 831 F.2d 1245 (5th Cir.1987).

**26.** 636 F.2d 114 (5th Cir.1981).

As in *Profitt*, it does not appear that Bouchillon had any defense available to him other than insanity. Furthermore, like Profitt's attorneys, Bouchillon's attorney was aware that Bouchillon had been in mental institutions. However, unlike in *Profitt*, Bouchillon's attorney did not ask for a psychiatric evaluation. And unlike *Profitt*, the trial court and Bouchillon's attorney did not have the extended contact of a full trial from which to evaluate his behavior, but rather only the limited contact pursuant to a guilty plea. Their observations concerning his demeanor must therefore be less meaningful.

The *Beavers* case is even more factually similar than *Profitt* to the one at bar. Beavers was indicted on robbery charges. Like Bouchillon, Beavers was a prior offender. Like Bouchillon, Beavers had been in mental institutions in the past. And like Bouchillon, Beavers' attorney was aware that Beavers had been hospitalized in the past for mental problems. In spite of this knowledge, Beavers' attorney did no investigation of this hospitalization beyond one phone call to one institution. From this conversation he determined that it would not be worthwhile to request Beavers' medical records because Beavers was listed as "restored." He further decided, as a tactical matter, not to have Beavers evaluated by a psychiatrist. Had he requested Beavers' medical records he would have found that although Beavers was listed as "restored" at the time of his discharge, the prognosis was guarded. In *Beavers* we noted that evidence of Beavers' mental problems "might have been very effective if presented at trial," and that a tactical choice not to pursue one course or another "should not be confused with the duty to investigate." 636 F.2d at 116.

If *Profitt* and *Beavers* represent instances of ineffective assistance of counsel, this case, where counsel did no investigation whatsoever, must be. To do no investigation at all on an issue that not only implicates the accused's only defense, but also his present competency, is not a tactical decision. Tactical decisions must be made

in the context of a reasonable amount of investigation, not in a vacuum. "It is not enough to assume that counsel ... thought there was no defense, and exercised [his] best judgment.... Neither [he] nor the court could say what a prompt and thoroughgoing investigation might disclose as to the facts." *Powell v. Alabama*, 287 U.S. 45, 58, 53 S.Ct. 55, 60, 77 L.Ed. 158 (1932). It must be a very rare circumstance indeed where a decision not to investigate would be "reasonable" after counsel has notice of the client's history of mental problems.

We are not insensitive to the hardships imposed on appointed counsel who work with little or no compensation under difficult conditions. It is very often a thankless undertaking. Nevertheless, there is a duty to investigate which cannot be abridged because counsel is only appointed, not retained. Where a condition may not be visible to a layman, counsel cannot depend on his or her own evaluation of someone's sanity *once he has reason to believe an investigation is warranted* [27] because, where such a condition exists, the defendant's attorney is the sole hope that it will be brought to the attention of the court.

Similarly, the trial court also relies on counsel to bring these matters to his or her attention. "[J]udges must depend to some extent on counsel to bring issues into focus." *Drope v. Missouri*, 420 U.S. 162, 176–77, 95 S.Ct. 896, 906, 43 L.Ed.2d 103 (1975). The appointment of counsel is a critical juncture along the road of a criminal prosecution. If counsel fails here to alert the court to the defendant's mental status the fault is unlikely to be made up—particularly where a plea bargain removes the accused from the observation of the court and decreases the probability that counsel will deem it necessary to do further research in pursuit of a defense.

In this case, counsel's lack of investigation after he had notice of Bouchillon's past institutionalization, fell below reasonable professional standards. Thus, Bouchillon has met both prongs of the *Strickland* test and we affirm the District Court's ruling

---

**27.** This is the principal factor which distinguishes this case from *Strickland*.

that Bouchillon was denied effective assistance of counsel.

## CONCLUSION

We AFFIRM the District Court's judgment granting Bouchillon's petition and order him released subject to the State of Texas' right to retry him within a reasonable time.