This is an appeal from an order of Judge Richard McMonagle. While I concur in the majority's judgment dismissing this case, I write separately to note my belief that Otte's postconviction claims should not be forever barred because of the failure to submit a timely appeal.
On February 12 and 13, 1992, Otte robbed and killed Robert Wasikowski and Sharon Kostura in separate incidents at an apartment complex in Parma, Ohio. Charged with capital murders, Otte admitted the killings, defended only against the degree of the offense, and, after conviction, introduced mitigation evidence. In defense and mitigation, he pointed to his youth, his drug and alcohol addiction, subnormal mental abilities, and emotional instability. Otte waived his right to a jury trial, and was convicted of capital murder by a three-judge panel and sentenced to death by electrocution. His conviction and sentence was upheld on appeal. State v. Otte (1996),74 Ohio St.3d 555, 660 N.E.2d 711.
On September 20, 1996, Otte filed a petition for postconviction relief pursuant to former R.C. 2953.21. Prominent among his claims is an allegation that, while held in jail before trial, he was given powerful antipsychotic medication to control violent outbursts and signs of mental illness, such as auditory hallucinations and paranoia. He further alleges that he was given increasingly larger doses of these medications. No mention of Otte's medication, however, appears in the trial court record. Otte claims, inter alia, that the medication impaired his ability to make a voluntary and informed waiver of his right to a jury trial, that the medication rendered him incompetent to stand trial, and that his trial lawyer was ineffective for failing to investigate Otte's mental illness, his incompetence, and the possibility of an insanity plea.
On April 1, 1996, Otte requested appointment of postconviction counsel pursuant to then R.C. 2953.21, and counsel was appointed. Although it appears that the amendments to R.C. 2953.21, mandating appointment of counsel in death penalty cases, were not yet effective, the appointment was still authorized by R.C. 120.16 and 120.26. On June 11, 1999, the judge entered judgment denying Otte's petition without a hearing, and issued findings to support his ruling. At some point after the judge's order, Otte's appointed attorney notified the Ohio Public Defender's Office that he no longer intended to represent Otte, and the Public Defender's Office assumed that representation.
On June 21, 1999, despite the fact that the judge had already issued a ruling denying Otte's petition, the State filed a motion to dismiss. On June 25, 1999, and again on June 28, 1999, the judge's findings and decision were filed and journalized. On July 22, 1999, Otte filed a notice of appeal from the June 25, 1999 entry of judgment.
I agree that because the judge's June 11, 1999 entry of judgment was final, the time to appeal that ruling began on that date. If Otte received notice of the June 11, 1999 judgment, he was required to appeal from that judgment, and not the later entries. Kertes Ent., Inc.v. Orange Village Planning Zoning Comm. (1990), 71 Ohio App.3d 151,152-53, 593 N.E.2d 306, 307.
My concern is that our decision today might foreclose Otte's chances for review of his postconviction claims. Although I believe that Otte has a statutory right to effective assistance of counsel, current law does not favor his chance of reopening this appeal pursuant to State v. Murnahan (1992), 63 Ohio St.3d 60, 584 N.E.2d 1204, because the constitutional right to effective appellate counsel does not extend to postconviction proceedings. State v. Crowder
(1991), 60 Ohio St.3d 151, 152, 573 N.E.2d 652, 653-54. A second postconviction relief petition in state court will require a showing that Otte was "unavoidably prevented" from raising his claims in earlier proceedings, as well as a "clear and convincing" showing that constitutional error caused Otte's conviction or death sentence. R.C. 2953.23.
Otte might be able to rely on ineffective assistance of counsel to show that he was unavoidably prevented from raising his claims. See Murray v. Carrier (1986), 477 U.S. 478, 488, 106 S.Ct. 2639,2645, 91 L.Ed.2d 397, 408-09 (ineffective assistance of counsel may be used to show cause for petitioner's procedural default). However, even if he passes that test he will not be relieved of the heightened burden of proof of R.C. 2953.23, a burden that will be placed on him only because of apparent confusion over multiple judgment entries, and not for any reasoned purpose.
This court consistently favors deciding cases on their merits when possible. Denial of postconviction claims for reasons other than on their merits implicates the integrity of the judicial system. This concern is heightened when the postconviction petitioner is under a sentence of death. When a petitioner's claims are not heard because of procedural default, we risk imposing ultimate punishment on defendants who have been denied a proper hearing through no fault of their own. Otte's postconviction claims appear to deserve some scrutiny, as he has alleged facts and circumstances that should have been noticed and considered in a capital murder trial, but do not appear anywhere in the trial record.
The judge oddly supported his dismissal by noting the lack of any mention of Otte's medication in the record. This seems, on its face, contrary to the basic principles of postconviction relief, which seek to establish that matters outside the record should have been presented and considered at trial. In this case, however, it appears that the judge was presented with evidence outside the original trial record, and should have determined whether that evidence showed that Otte's claims deserved further scrutiny. A defendant's use of medication while awaiting and during trial can raise constitutional issues of fundamental fairness and ineffective assistance of counsel. Bouchillon v.Collins (C.A.5, 1990), 907 F.2d 589. Nonetheless, we cannot ignore the jurisdictional defect here.
In the future, perhaps, judges and legislators will consider statutes and apply procedural default rules with an understanding of their purposes and consequences, both for the individual petitioner and the judicial system as a whole. Because I believe that Otte's claims deserved to be heard on their merits, and that no reasoned basis exists to deny subsequent review on the merits based on the circumstances here, I cannot simply dismiss the appeal without comment.