THE STATE OF TEXAS



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

NO. 2-06-298-CR

EX PARTE

THEODORE WILKINSON

------------

FROM THE 158TH DISTRICT COURT OF DENTON COUNTY

------------

## OPINION

------------

Appellant Theodore Wilkinson appeals from the trial court's denial of his application for writ of habeas corpus filed pursuant to article 11.072 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 11.072 (Vernon 2005). In two issues, Appellant argues (1) he was incompetent to stand trial when he pleaded guilty to attempted burglary and (2) his appointed counsel at the time of the plea hearing rendered ineffective assistance by failing

to request a competency hearing. We grant his requested relief and reverse and remand.

## Background

Appellant has a long history of mental illness. He has been under the care of Denton County MHMR for fourteen years, has been diagnosed with "bipolar disorder, delusional disorder—paranoid, grandiose and persecutory ideation, polysubstance abuse, [schizoaffective] disorder, and narcissistic personality disorder," has been hospitalized for mental illness several times, and has a history of failing or refusing to take his medications.

In late November 2003, Denton police officer Brandon Rana was dispatched in response to a suspicious-person call when a witness reported a man with a briefcase—Appellant—repeatedly attempting to break into an apartment. Appellant told witnesses that he was attempting to retrieve a computer hard drive from the apartment and that he had been authorized by the district attorney to do so. Appellant left the scene before Officer Rana arrived.

### *The Attempted Burglary*

Later that night, Officer Rana saw Appellant attempting to remove a window screen from the same apartment with a tool that was later determined to be a butter knife. Appellant had also tied two spoons to the apartment's door with red and black speaker wire. When Officer Rana approached Appellant

2

and identified himself, Appellant walked briskly over to him and said in a loud voice, "I am a CIA agent. Sergeant, you need to disarm yourself." When Officer Rana reached for his pepper spray, Appellant fled through an open window into another apartment. Officer Rana entered the apartment, found Appellant lying on a mattress in the middle of the apartment's living room, and arrested him.

### The Plea of Guilty

Appellant was indicted for attempted burglary of a habitation, a third degree felony. The trial court appointed attorney Ronald Vanzura to represent him. Vanzura did not request a competency hearing. On April 8, 2004, pursuant to a plea bargain, Appellant pleaded guilty to the charge. At the sentencing hearing, the trial court placed him on four years' deferred adjudication community supervision. The community supervision order recites that "it plainly appear[ed] to the Court that the said defendant is mentally competent . . . ." However, the presentence investigation report completed on April 29, 2004, states that "[Appellant] appears to be a poor candidate for probation. He suffers from mental illness and often forgets or refuses to take his prescribed medications." The presentence report further observed that Appellant suffers from "delusional thinking" and appears not to be in touch with

3

reality and recommended that he have a complete psychiatric workup and be added to the MHMR caseload.[1]

### *Motion to Proceed to Adjudication*

On October 29, 2004, the State filed a motion to proceed to adjudication, alleging several violations of the conditions of community supervision, including an allegation that Appellant threatened to "blow up everyone" in the apartment complex where he lived.

### *Appellant Adjudicated Incompetent*

The trial court appointed new counsel to represent Appellant in the adjudication proceedings, and counsel immediately filed a motion requesting a competency examination. The trial court ordered Dr. Grace Graham, a psychologist, to conduct the examination. On February 24, 2005, based on Dr. Graham's report, the trial court determined that Appellant was indeed incompetent and ordered him committed for 120 days to the North Texas State Hospital at Wichita Falls. On June 5, 2005, a sixty-day extension was recommended by his treating psychiatrist on the ground that he remained incompetent to stand trial.

---

[1] The trial court included in the conditions of community supervision that Appellant be placed on the MHMR caseload and undergo a psychiatric examination.

4

***Appellant's Incompetency Continues***

In July 2005, the trial court ordered a civil commitment of Appellant for one year based on a treating psychiatrist's certification that Appellant suffered from severe mental illness, that he remained incompetent, and that he was likely to continue to remain so for more than ninety days. In December 2005, the trial court appointed a psychiatrist to examine Appellant again. That psychiatrist concluded on January 30, 2006, that Appellant continued to suffer from severe mental illness and remained incompetent to stand trial. The trial court ordered another 120-day civil commitment for Appellant, which was later extended for another sixty days.[2]

***Application for Writ of Habeas Corpus in Trial Court***

In the meantime, after the trial court had declared Appellant incompetent to proceed to adjudication based on Dr. Graham's report, Appellant's retained

---

[2]On March 29, 2006, a psychiatrist at Big Spring Hospital, where Appellant had been transferred, reported to the trial court that Appellant had regained competency. No additional materials in the file reveal whether the trial court has adjudicated Appellant competent to stand trial. We will presume that Appellant continues to be incompetent, absent such an adjudication. *See Johnson v. State*, No. 02-05-00205-CR, 2006 WL 2578033, at *4 (Tex. App.—Fort Worth June 22, 2006) (order not designated for publication) (noting presumption of continuing incompetency that attaches after an accused has been determined to be incompetent until the trial court actually adjudicates the accused to be competent).

5

counsel filed an application for writ of habeas corpus in the trial court in September 2005, challenging the original deferred adjudication order and alleging that (1) Appellant was incompetent to stand trial when he pleaded guilty and (2) he had been deprived of his right to effective assistance of counsel when his previous counsel, Vanzura, failed to request a competency hearing. At the request of Appellant's counsel, Dr. Graham performed a retrospective competency determination and concluded that Appellant had been incompetent to stand trial when he pleaded guilty. The trial court conducted a hearing on Appellant's application for writ of habeas corpus on July 28, 2006.[3] Three witnesses testified: Dr. Graham, Appellant's father, and Vanzura.

### Dr. Graham's Testimony

Dr. Graham testified that, to perform her retrospective competency examination, she interviewed Appellant and reviewed his mental health records, police records, emails to his father, and jail records. Appellant told her that he had been recruited by the CIA while he was in jail. He accused his parents of being crazy and said that the President and Secretary of State were conspiring

---

[3] The judge who made the determinations that Appellant was incompetent to proceed to adjudication and who conducted the hearing on the application for writ of habeas corpus was not the judge who received Appellant's guilty plea; the plea was received by a visiting judge. Why the hearing on Appellant's application for writ of habeas corpus was not held for ten months is not revealed in the record.

6

against him. Dr. Graham said that Appellant's email from the time of his guilty plea showed Appellant "was not of sound mind at all. He was thick into his delusion and very ill mentally[.]" In email to his father shortly before the guilty plea, Appellant insisted that he worked for the CIA and that the President wanted to have him killed out of envy for his political ability. He claimed to be deployed on an operation code-named "Zebra Nile"; that he had raided the city police, the county sheriff, the jail guard, the bailiffs, and the judges; that he had been recruited in his cell by a CIA agent; and that he had received forty-five CIA directives "from the jail cells." He made similar claims in letters to his father and Vanzura sent a few weeks after he entered his guilty plea.

Dr. Graham testified that Appellant was "more clear" when he was taking his medications, but even then, he was "very, very deep into his delusion." In Dr. Graham's opinion, Appellant had not been in any position to assist his defense attorney in preparing for his trial, he had not been able to understand the charges brought against him, he was not able to comprehend the consequence of his plea, and he was not able to help his defense counsel prepare for his defense.

### Appellant's Father's Testimony

Appellant's father testified that Appellant, who was forty-five years old at the time of the hearing, began to exhibit mental health problems when he

7

was still in school in 1985, when he asked a neighbor for a knife so he could sacrifice himself to Jesus. Mr. Wilkinson stated Appellant was treated first at Timberlawn when the family had good insurance, but he has been under the care of MHMR in Denton County since then. He testified that communications he received from Appellant around the time of his guilty plea were delusional about being employed by the CIA.[4] He testified that he called Vanzura several times and wrote a letter to him expressing concern over Appellant's competency, but Vanzura never replied.

### Trial Counsel's Testimony

Vanzura admitted that he had no recollection of Appellant's mental status when he first visited him in jail in December 2003 after his appointment to represent him. Nor did Vanzura recall the judge they appeared before at Appellant's plea hearing. Vanzura conducted no investigation other than to review the probable cause affidavit and talk to the prosecutor about the case. He did not file a suggestion of incompetency, nor did he request the court to have Appellant examined by a psychologist. He did not recall the officer's description in the probable cause affidavit of Appellant's statement that

---

[4]Appellant's father confirmed that Appellant was never employed by the CIA nor any similar organization.

Appellant thought he was employed by the CIA. But he did remember receiving several letters from Appellant while he was in jail, claiming that he was a CIA agent.

Vanzura testified that he knew that Appellant was an "MHMR client . . . from Judge Windle's court [the Denton County Probate Court]" and that he was "very knowledgeable of the fact that [Appellant] had an extensive mental health history." At his initial interview with Appellant, Appellant told him that he had been taking his medication, and Vanzura felt like he understood the nature of the charge. Vanzura testified that he "could tell by the changes of the tones of the letter[s] that he was sending me that he was getting more and more lucid." After a court appearance with Appellant on March 19, 2004, Vanzura wrote in his statement of services, "He is lucid and accepts the [plea bargain] offer." Vanzura testified that on the day of the plea, he "was very concerned that [Appellant] had capacity . . . to understand." He asked Appellant if he understood what he was doing, and Appellant said "yes," so Vanzura felt that Appellant understood. Vanzura testified that Appellant told him he had been taking his medication "and under the Strickland standards, I felt Appellant understood the nature of the charge" and was able to confer with him.[5] At the

_____

[5] Vanzura referred to the "*Strickland* standards" twice when describing Appellant as being competent. However, he acknowledged on cross-

9

conclusion of the hearing, the trial court denied Appellant's application.[6]

Appellant then perfected this appeal.

## Standard of Review

To prevail on a writ of habeas corpus, the proponent must prove his allegations by a preponderance of the evidence. *See Ex parte Thomas*, 906 S.W.2d 22, 24 (Tex. Crim. App. 1995), *cert. denied*, 518 U.S. 1021 (1996). When reviewing a trial court's decision to grant or deny relief on a writ of habeas corpus, we should review the facts in the light most favorable to the trial court's ruling and should uphold it absent an abuse of discretion. *Ex parte Peterson*, 117 S.W.3d 804, 819 (Tex. Crim. App. 2003). Reviewing courts should afford almost total deference to a trial judge's determination of the historical facts supported by the record, especially when the fact findings are based on an evaluation of credibility and demeanor. *Id.* at 819 n.67.

---

examination that he was referring to *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984). As Appellant's current counsel pointed out to Vanzura at the hearing, that case established the standards for ineffectiveness of counsel, not competency of an accused to stand trial.

[6] The record does not show that the trial court made the findings of fact and conclusions of law required by article 11.072, section 7(a). *See* TEX. CODE CRIM. PROC. ANN. art. 11.072, § 7(a) ("[T]he court shall enter a written order including findings of fact and conclusions of law.").

The determination of competency is not solely a factual issue but rather is a mixed question of law and fact. *Drope v. Missouri*, 420 U.S. 162, 174–75, 95 S. Ct. 896, 905–06 (1975). When dealing with mixed questions of law and fact, the reviewing court should give the same level of deference if the resolution of those questions turns on an evaluation of credibility and demeanor. *Peterson*, 117 S.W.3d at 819; *see also Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005). Unless reviewing courts are unable to determine from the record what the trial court's implicit factual findings are, they should grant deference to implicit factual findings that support the trial court's ruling. *Peterson*, 117 S.W.3d at 819.

But we review de novo the application of law to fact and those questions of law and fact that do not depend upon credibility and demeanor. *Id*. Application of the test for incompetency is a legal question. *Drope,* 420 U.S. at 174–75, 95 S. Ct. at 905–06; *United States v. Makris*, 535 F.2d 899, 908 (5th Cir. 1976) (stating even if medical expert's opinion is credited, trial court must independently decide if defendant was capable of reasonable consultation with counsel and comprehended proceedings), *cert. denied*, 430 U.S. 954 (1977).

**Discussion**

In his first issue, Appellant argues that the trial court abused its discretion when it denied his application for writ of habeas corpus because the evidence showed that Appellant was incompetent when he entered his plea. We agree.

*Comptency*

A defendant's constitutional due process right to a fair trial prevents the State from subjecting him to trial when his "mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense." *Drope*, 420 U.S. at 171, 95 S. Ct. at 903; *Pate v. Robinson*, 383 U.S. 375, 378, 86 S. Ct. 836, 838 (1966). A person is incompetent to stand trial if he does not have sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding or a rational, as well as factual, understanding of the proceedings against him. TEX. CODE CRIM. PROC. ANN. art. 46B.003(a) (Vernon 2006). A defendant is presumed competent to stand trial and shall be found competent to stand trial unless proved incompetent by a preponderance of the evidence. *Id*. art. 46B.003(b).[7] Lack of competency can

---

[7] If a *prior*, unvacated determination of incompetency is shown, the presumption is that the incompetency continues, and the burden shifts to the State to prove the accused's competency to stand trial beyond a reasonable doubt. *Manning v. State*, 730 S.W.2d 744, 748 (Tex. Crim. App. 1987). Appellant was determined by the trial court to be incompetent for the motion to proceed to adjudication for a time that post-dated his plea of guilty. Thus

12

be raised for the first time by post-trial writ of habeas corpus. *Ex parte Yarborough*, 607 S.W.2d 565, 566 (Tex. Crim. App. 1980).

### *Retrospective Determination of Compentency*

A retrospective determination of competency is allowed if there is sufficient evidence available to assure that a reliable determination of competency can be made. *Bolius v. Wainwright*, 597 F.2d 986, 988 (5th Cir. 1979) (citing *Makris*, 535 F.2d at 904–05). "'If the court finds that a meaningful competency hearing cannot be conducted, then of course, the writ must issue.'" *Bouchillon v. Collins*, 907 F.2d 589, 594 n.14 (5th Cir. 1990) (quoting *Martin v. Estelle*, 583 F.2d 1373 ,1374 (5th Cir. 1978)).

The State suggests that there are "inherent problems" with making a retrospective determination of Appellant's competency at the time of his plea hearing, noting that fourteen months had elapsed between his plea hearing and the hearing on his application for writ of habeas corpus. However, the difficulties inherent in making a retrospective determination of a defendant's competency have been recognized and addressed by the United States Supreme Court as well as the Texas Court of Criminal Appeals. *See Brandon v. State*, 599 S.W.2d 567, 573 (Tex. Crim. App. 1979) (citing *Dusky v. United States*,

---

the presumption of continuing incompetency does not aid Appellant in this proceeding.

362 U.S. 402, 80 S. Ct. 788 (1960), *Pate*, 383 U.S. 375, 86 S. Ct. 836, and *Drope*, 420 U.S. 162, 95 S. Ct. 896 as spelling out some of the difficulties involved in making retrospective competency determinations, including passage of time, present recollection of expert witnesses, and ability of the judge and jury to observe the subject of their inquiry)), *vacated on other grounds*, 953 U.S. 902 (1981).

However, as the court of criminal appeals observed in *Brandon,* "[t]here is . . . ample authority that the requirements of due process may be fully met as it concerns [an appellant] if he were now granted a trial to determine, after the fact, whether he was competent at the time he was tried and convicted," and concluded: "[r]etrospecive determinations are possible depending upon the facts of each case and the quality and quantity of evidence available." *Id.* at 573 (collecting cases). The length of time after trial in which it has been held feasible to determine whether a defendant was competent when he was tried ranges up to twenty-four years. *Id.* at 573–74 (citing *Lee v. Alabama*, 406 F.2d 466, 471–72 (5th Cir.), *cert. denied*, 395 U.S. 927 (1969)). Passage of time is only one factor to be considered. *Id.* at 574.

### Evidence of Incompetency

The question of competency "is often a difficult one in which a wide range of manifestations and subtle nuances are implicated." *Drope*, 420 U.S.

14

at 180, 95 S. Ct. at 908. Not all people who have a mental problem are rendered by it legally incompetent. *Bouchillon*, 907 F.2d at 593. But "[o]ne need not be catatonic, raving or frothing to be [legally incompetent]." *Lokos v. Capps*, 625 F.2d 1258, 1267 (5th Cir. 1980). Demeanor is not dispositive. *Pate*, 383 U.S. at 386, 86 S. Ct. at 842. The existence of even a severe psychiatric defect is not always apparent to a layperson. *Bruce v. Estelle*, 536 F.2d 1051, 1059 (5th Cir.1976), *cert. denied*, 429 U.S. 1053 (1977). Nor—in the case of a person who experiences intervals of competency and incompetency—is an episode of diminished capacity necessarily obvious to the layperson. *Bouchillon*, 907 F.2d at 593. But a layperson's observation of *abnormal* acts by an accused may be of great value as evidence. *United States v. Gray*, 421 F.2d 316, 318 (5th Cir. 1970).

Because it is difficult for a layperson to detect and assess competency, expert opinion plays an especially important role in competency determinations. When an expert witness, such as a psychologist, testifies at a competency hearing, the court is not free to disregard the expert's testimony unless *"there is sufficient evidence to justify doing so." Bouchillon*, 907 F.2d at 594 n.15 (emphasis in original) (citing *Maggio v. Fulford*, 462 U.S. 111, 117–18, 103 S. Ct. 2261, 2264 (1983)). In *Maggio*, the Supreme Court held that the trial court was justified in discounting unimpeached testimony of a psychiatrist who

15

opined that the defendant was incompetent because the defendant had no history of mental illness, the trial judge noted that he was "thoroughly convinced" that the defendant was competent based on his own observations during and after trial, and the basis of the psychologist's opinion—that the defendant suffered from paranoid delusions because he refused to identify two alibi witnesses for fear they would be arrested—was unfounded because the same two witnesses actually testified at trial. *Maggio*, 462 U.S. at 113–15, 117–18, 103 S. Ct. 2262–63, 2264.

By contrast, in *Bouchillon*, as in this case, the only witness called by the State was defendant's trial counsel, who testified that defendant was "lucid" and able to assist in his defense and therefore competent when he pleaded guilty. The appellate court held that testimony and evidence concerning his demeanor at the plea hearing were insufficient to override a psychologist's expert opinion—given after he conducted a retrospective competency assessment—that the defendant was incompetent. *Bouchillon*, 907 F.2d at 594.

Where expert testimony clearly and overwhelmingly points to a conclusion of incompetency, the fact-finder cannot arbitrarily ignore the expert in favor of lay testimony. *Id.* at 594 n.15*; Strickland v. Francis*, 738 F.2d 1542, 1552 (11th Cir. 1984) (citing *Brock v. United States*, 387 F.2d 254, 257 (5th Cir.

16

1967)).  In *Brock*, the fifth circuit listed four factors that an appellate court should consider when assessing a fact-finder's decision to disregard an expert's opinion that a defendant was incompetent:

> (1) the correctness or adequacy of the factual assumptions on which the expert opinion is based;
>
> (2) possible bias in the expert's appraisal of the defendant's condition;
>
> (3) inconsistencies in the expert's testimony, or material variations between experts; and
>
> (4) the relevance and strength of the contrary lay testimony.

*Brock*, 387 F.2d at 258 (quoting *Mims v. United States*, 375 F.2d 135, 143–44 (5th Cir. 1967)).

Additionally, when a defendant's trial attorney testifies at a retrospective competency hearing that the defendant was competent when he pleaded guilty, the attorney's testimony must be discounted because of the potential for a conflict of interest. *Bolius*, 597 F.2d at 989.  In *Bolius*, the defendant's counsel at the time he pleaded guilty testified that the defendant was able to relate facts to him coherently, had his senses under control, and was in command of the situation. *Id.* at 989 n.6.  The court of appeals expressed doubt about the value of counsel's testimony:

> [T]he testimony of trial counsel cannot be treated as evidence coming from a totally disinterested witness.  Had counsel testified

17

to anything other than Bolius's competency to plead guilty, he would have placed himself in an awkward ethical position by revealing that he had allowed his client to plead guilty at a time when he personally believed Bolius to be incompetent.

*Id.* at 989; *see also Bouchillon*, 907 F.2d at 594 & n.9 (reiterating observation in *Bolius* that "the testimony of trial counsel cannot be treated as coming from a totally disinterested witness").

In this case, the trial court was presented with testimony from three witnesses: Dr. Graham, the court-appointed psychologist; Appellant's father; and Vanzura, Appellant's trial counsel. Dr. Graham concluded from her retrospective competency analysis that Appellant was incompetent when he entered his guilty plea. Appellant's father testified that Appellant has a long history of mental illness and that communications from Appellant at the time of the plea hearing were delusional. Vanzura testified that Appellant appeared to be taking his medications and was "lucid" and able to consult with him and, therefore, competent.

Because the trial court implicitly disregarded Dr. Graham's expert testimony in favor of Vanzura's lay testimony in failing to find Appellant incompetent at the time of his plea, we must determine whether there is a sufficient basis in the record to justify so doing. *See Bouchillon*, 907 F.2d at 594 n.15. None of the four *Brock* factors weighs in favor of disregarding Dr.

18

Graham's opinion. *See Brock*, 387 F.2d at 258*.* Her testimony is uncontradicted and unimpeached. Nothing in the record suggests that her factual assumptions were incorrect or inadequate; nor is there any suggestion of bias. Her opinion is internally consistent, and because she was the only expert witness, there is no material variation between her opinion and other expert opinions.

In contrast, the lay testimony that Appellant was improving and mentally competent—that of attorney Vanzura—was purely conclusory. His testimony was based on what Appellant told him—that Appellant was taking his medication, and Appellant's "yes" answer that he understood what they were doing. Vanzura's assumption that this information was correct was only speculation because it was based upon no personal knowledge of any underlying facts that Appellant was, indeed, medicated or improving. Opinion testimony based on speculation or conjecture has no probative value. *See, e.g., Turro v. State*, 950 S.W.2d 390, 403 (Tex. App.—Fort Worth 1997, pet. ref'd); *United Way of San Antonio, Inc. v. Helping Hands Lifeline Found., Inc.*, 949 S.W.2d 707, 712 (Tex. App.—San Antonio 1997, writ denied) (op. on reh'g).

Specifically, opinion testimony of a lay witness as to an individual's sanity or competency must be based on underlying personal observations or experiences of the witness. *See Bigby v. State*, 892 S.W.2d 864, 888–89

19

(Tex. Crim. App. 1994) (holding lay opinion that defendant was insane based on information from others not properly admitted), *cert. denied*, 515 U.S. 1162 (1995); *Pacheco v. State*, 757 S.W.2d 729, 734 (Tex. Crim. App. 1988) (holding that to be "competent" evidence lay opinion must be based on personal knowledge or experience). Rule 701 of the Texas Rules of Evidence limits opinion testimony of a lay witness to that which is rationally based on perception of the witness. TEX. R. EVID. 701. The requirement that the testimony be based on the witness's "perception" presumes the witness personally observed or experienced the underlying facts. *Bigby,* 892 S.W.2d at 889. Other than what Appellant told him, Vanzura merely assumed that Appellant was taking his medication because he appeared to Vanzura to be improving and "lucid."[8]

But, as observed by the fifth circuit, where a condition—such as mental incompetency—may not be visible to a layman, "counsel cannot depend on his or her own evaluation of someone's sanity *once he has reason to believe an*

---

[8] A lay witness's observation that an accused seems "normal" is of no value unless the witness has had "intimate and prolonged contact with the accused." *Gray,* 421 F.2d at 318 (quoting *Carter v. United States*, 252 F.2d 608, 618 (D.C. Cir. 1957)); *see also Makris*, 535 F.2d at 908. Vanzura had some unspecified contact with Appellant in the past, a face-to-face meeting with him in jail, and two meetings in the basement of the courthouse. This does not equate to intimate and prolonged contact.

*investigation is warranted* [] because, where such a condition exists, the defendant's attorney is the sole hope that it will be brought to the attention of the court." *Bouchillon*, 907 F.2d at 597 (emphasis in original). And it "must be a very rare circumstance indeed where a decision not to investigate would be 'reasonable' after counsel has notice of the client's history of mental problems." *Id.* Counsel cannot rely upon his own naked evaluation of his client's competency under those circumstances, and neither can we.

In addition to Dr. Graham's testimony, the evidence was also undisputed by the State that Appellant—unlike the defendant in *Maggio*—has a long and well-documented history of mental illness. *See Maggio*, 462 U.S. at 113–15, 117–18, 103 S. Ct. 2262–63, 2264. Further—and again unlike *Maggio*—the judge who conducted the retrospective competency hearing did not conduct the plea hearing and thus did not personally observe Appellant's demeanor and behavior at the plea hearing. *See id.* Finally, Appellant's father's testimony that Appellant's communications from around the time of the plea hearing were delusional—a "lay witness's observation of abnormal acts by [the] accused"—is evidence of considerable value, unlike the testimony of Appellant's trial counsel. *See Gray,* 421 F.2d at 318.

Under these circumstances, we hold that the trial court abused its discretion by disregarding Dr. Graham's expert testimony and implicitly finding

that Appellant was competent at the time of his plea hearing. We further hold that Dr. Graham's testimony established by a preponderance of the evidence that Appellant was incompetent at the time of his plea hearing. We sustain Appellant's first issue.

## Conclusion

Having sustained Appellant's first issue, we reverse the trial court's order denying Appellant's petition for writ of habeas corpus, vacate the trial court's order placing Appellant on deferred adjudication community supervision, and order that Appellant be released when he is adjudicated to be competent, subject to the State's right to a new plea hearing and trial of Appellant within a reasonable time. Because of our resolution of Appellant's first issue, we will not consider his second issue, in which he complains that trial counsel rendered ineffective assistance. *See* TEX. R. APP. P. 47.1.

ANNE GARDNER
JUSTICE

PANEL A: CAYCE, C.J.; HOLMAN and GARDNER, JJ.

DO NOT PUBLISH
TEX. R. APP. P. 47.2(b)

DELIVERED: May 15, 2008

22