JOURNAL ENTRY and OPINION
This is an appeal from an order of Judge Richard J. McMonagle that denied the post-conviction relief petition of appellant Gary W. Otte. Otte contends it was error to find that the grounds raised in his petition were barred by the doctrine of res judicata or that the petition set forth insufficient allegations and supporting facts to merit an evidentiary hearing. He also contends that Ohio's post-conviction procedures are unconstitutional. We agree with Otte's first two contentions and have no need to address the third. We affirm in part, reverse in part and remand.
On February 12 and 13, 1992, apparently as part of a drug and alcohol binge, Otte, then twenty years old, robbed and killed Robert Wasikowski and Sharon Kostura in separate incidents at an apartment complex in Parma, Ohio. He was indicted on two counts of aggravated murder with felony murder, mass murder, and firearm specifications, as well as two counts each of aggravated burglary, aggravated robbery, and kidnaping. On June 25, 1992, he acknowledged his waiver of jury trial in an abbreviated court proceeding:
 THE JUDGE: All right. We're here on the matter of the State of Ohio versus Gary Otte, Case 279973. And this has been called for trial for Monday and we have sent notices out to 75 potential jurors. And it's my understanding counsel for Mr. Otte, you are willing to waive the jury trial and be tried to three Judges of this Court, is that correct?
 MR. D'ANGELO: That's correct, your Honor. I discussed with Mr. Otte his right to trial by jury, or try it to a three Judge panel, and I advised him pursuant to the discussions of the Court and I recommended to him that we try the case to a three Judge panel, and I recommended to him the members of the panel will be Judge Richard McMonagle, Judge [Lesley Brooks] Wells, and Judge [Frank] Gorman. And he agreed to waive his right to jury trial.
THE JUDGE: Is that correct, Mr. Otte?
THE DEFENDANT: Yes.
 THE JUDGE: You read the form about waiving your right to trial by jury?
THE DEFENDANT: Yes.
THE JUDGE: You agree that is your signature?
THE DEFENDANT: Yes.
 THE JUDGE: And it's signed by both your counsel as witnesses?
THE DEFENDANT: Yes.
 THE JUDGE: With that in mind we'll contact the jurors and tell them it will not be necessary for them to be here Monday.
A signed waiver form, dated June 25, 1992, is appended to Otte's post-conviction petition but is not part of the trial record. Trial was held on September 16, 1992. On September 22, 1992, a journal entry noted Otte's jury waiver.
Otte presented no evidence at the guilt phase of his trial, and his cross-examination of the State's witnesses was limited to eliciting evidence and testimony concerning his claimed intoxication at the time of the offenses. Through his written confession introduced as evidence during the guilt phase, he claimed that he was highly intoxicated at the time of the killings, having consumed large quantities of liquor and crack cocaine. His lawyers, however, presented no expert evidence of Otte's mental state, and did not formally pursue any affirmative defenses. His lawyer made the following closing argument at the guilt phase, which is reproduced in its entirety:
 Your Honor, our position is legal, and simply put, we believe that there is no evidence as a matter of law, certainly to justify a finding of guilt beyond a reasonable doubt on the charge of kidnaping with respect to both victims in this case.
 We also believe that there is insufficient evidence, taking into account the defendant's voluntarily and intoxicated state to support the requisite mental intent of prior calculation and design, and finally that the mass murder specification is also not appropriate in this case.
 Other than that we feel that the Court has heard the evidence and can draw the appropriate conclusions therefrom.
On September 17, 1992, the panel returned a guilty verdict to the aggravated murder charges, and scheduled the trial's penalty phase for October 5, 1992. Otte presented mitigation evidence consisting of testimony from his mother and father, letters written by his siblings, and the testimony of court-appointed psychologist Dr. Nancy McPherson. The evidence generally showed that he had a hearing impairment from ear infections during childhood, as well as a stuttering problem, hyperactivity, learning disabilities, and an intelligence quotient in the bottom fifteen percent of the population. He developed behavioral and substance abuse problems as a teenager, had attempted suicide on three occasions and was, apparently, drug dependent at the time of the killings.
Dr. McPherson testified that Otte previously had been diagnosed with either adjustment disorder with depression, or depression as well as alcohol and drug abuse * * *. She interviewed Otte on April 22, 1992, and again on June 16, 1992, found no evidence that he suffered from psychosis, and attributed his reports of divergent experiences to his use of recreational drugs. She was not asked and did not indicate, however, whether she was aware that Otte was on medication at the times he was interviewed.
He was sentenced to death by electrocution. A different lawyer was appointed for his appeal and the conviction and sentence were upheld in State v. Otte (1996), 74 Ohio St.3d 555, 660 N.E.2d 711.
On September 20, 1996, Otte, through his appointed appellate lawyer, filed a petition for post-conviction relief pursuant to former R.C.2953.21. Through it, he claimed to have scientific evidence that he was not competent or able to make rational decisions before or during his trial. On June 11, 1999, the judge denied the petition without a hearing, and issued findings to support his ruling. At some point after that date, Otte's lawyer notified the Ohio Public Defender's Office that he no longer intended to represent Otte, and the Public Defender assumed that representation.
On June 21, 1999, despite the fact that the judge had already issued a order that denied Otte's petition, the State filed a motion to dismiss. On June 25, 1999, and again on June 28, 1999, the judge's findings and decision were filed and journalized. On July 22, 1999, Otte filed a notice of appeal from the June 25, 1999 entry of judgment which we dismissed. We granted reconsideration upon Otte's assertion that he did not receive notice of the June 11, 1999 judgment entry.
The fifty-six page, two hundred forty paragraph postconviction petition alleges eighteen separate causes of action, and appends over one hundred fifty pages of exhibits. Prominent among Otte's claims is an allegation that, while in jail before trial, he was given powerful antipsychotic medication to control violent outbursts and signs of mental illness, such as auditory hallucinations and paranoia. He alleged that he was given increasingly larger doses of these medications as his trial approached and that it impaired his ability to make a voluntary and informed waiver of his right to a jury trial, that it rendered him incompetent to stand trial, and that his trial lawyer was ineffective for failing to investigate and present evidence of his mental illness and his incompetence (causes of action nos. 1, 10 and 11). No mention of Otte's medication, whatsoever, appears in the trial record.
The petition also claims:
 a) that Otte's waiver of jury trial was involuntary because both the trial judge and his lawyers ineffectively failed to inform him of the nature of the right and the consequences of his waiver, including the increased risk of receiving the death penalty before the three judge panel (causes of action nos. 2, 4, and 5);
 b) that the panel had no jurisdiction to try, convict, or sentence him because the waiver of jury trial was not filed until after the trial was held (cause of action no. 3);
 c) that his trial lawyers were ineffective for failing to present expert evidence concerning the effects of his cocaine and alcohol use (causes of action nos. 6, 7, 8, and 9);
 d) that his trial lawyers were ineffective for failing to present coherent and effective evidence and argument during the penalty phase, and for failing to present expert evidence concerning his cocaine and alcohol use during the penalty phase (causes of action nos. 12 and 13);
 e) that his trial lawyers were ineffective for failing to present, during the penalty phase, further evidence and witnesses uncovered by a court-appointed mitigation expert and submitted to the trial lawyers in a report (cause of action no. 14);
 f) that the court did not consider evidence of his good behavior and adjustment to prison life in mitigation (cause of action no. 15);
 g) that Ohio's death penalty procedures are unconstitutional (cause of action no. 16);
 h) that his trial lawyers were ineffective during the guilt phase (cause of action no. 17), and;
 i) that the cumulative effect of the errors was prejudicial (cause of action no. 18).
Otte's petition included records showing his behavioral and medication history while in the Cuyahoga County Jail awaiting trial, reports from two psychologists opining that those records indicated his incompetence to stand trial and inability to make a reasoned decision concerning the waiver of his jury trial rights, affidavits from his trial lawyers stating that they had received and considered the report submitted by the court-appointed mitigation expert but decided against using more evidence or witnesses than those presented, and an affidavit, originally submitted in a different case, concerning the duties of a lawyer defending a capital case.
The judge dismissed Otte's petition without a hearing, and supported his decision by finding the following:
 1) that the first and second causes of action could be consolidated and denied together, as the transcript of Otte's waiver hearing, his written waiver of jury trial, and the journal entry recording his waiver showed that he was fully aware of his constitutional rights. The judge did not separately address the first cause of action, which alleged involuntariness based on the evidence that Otte was under the influence of antipsychotic medication at the time of the waiver;
 2) that the third, fourth, and fifth causes of action could be denied based on the same evidence used to deny the first and second causes of action. The judge did not separately address the third cause of action, which claimed the September 22, 1992 journal entry was untimely and could not grant the three judge panel jurisdiction to conduct the September 16, 1992 trial;
 3) that the sixth through tenth causes of action could be denied because they were not discussed nor brought to the court's attention during trial. The judge did not separately explain why Otte could not maintain an ineffective assistance of counsel claim for his lawyers' failure to raise these issues at trial;
 4) that the eleventh through fifteenth causes of action could be denied because they placed an undue burden on the trial lawyer to see into the future to determine whether or not the defendant has post-trial serious psychological defects that would later, after the verdict, be relevant to a defense presented at trial.
 The judge also noted that [t]he mitigation hearing along with the mitigation expert was quite voluminous and thorough, although he did not address the trial lawyers' failure to present any of the information contained in the mitigation expert's report during the penalty phase of the trial.
He also rejected Otte's remaining claims.
Otte's first assignment of error states:
 I. THE TRIAL COURT ERRED IN DISMISSING APPELLANT'S POST-CONVICTION PETITION WHERE HE PRESENTED SUFFICIENT OPERATIVE FACTS TO MERIT AN EVIDENTIARY HEARING AND DISCOVERY.
Otte addresses the dismissal of each of his causes of action separately, omitting only causes sixteen and seventeen, which alleged the unconstitutionality of Ohio's death penalty scheme and ineffective assistance of counsel during the trial's guilt phase. We uphold the dismissal of these two causes of action as they have not been appealed.
Before addressing the remainder of Otte's claims, we must first determine whether the judge's two page entry satisfies R.C. 2953.21(C), which requires findings of fact and conclusions of law upon dismissal of a postconviction petition. Although a judge need not submit voluminous findings, they must satisfy the purposes of giving the petitioner a basis from which to appeal, and a basis for review by an appellate court. State v. Calhoun (1999), 86 Ohio St.3d 279, 291, 714 N.E.2d 905, 916. The findings are sufficient if they are comprehensive and pertinent to the issues presented, * * * demonstrate the basis for the decision by the trial court, and * * * are supported by the evidence. Id., paragraph 3 of the syllabus. Here the opinion gives only sparse revelation of the reasons for denying Otte's claims, and we note that the gravity of capital cases requires full consideration of those claims. The very nature of the death penalty requires that every measure be taken to ensure that the penalty is given only to those meeting the statutory requirements. State v. Hessler (2000), 90 Ohio St.3d 108, 133,734 N.E.2d 1237, 1259 (Moyer, C.J., dissenting). Nevertheless, we find the opinion sufficient to allow our review and decision here.
Because Otte's petition was dismissed without a hearing, our review begins with R.C. 2953.21, which requires a judge to determine whether there are substantive grounds for relief and provide an evidentiary hearing [u]nless the petition and the files and records of the case show the petitioner is not entitled to relief[.] R.C. 2953.21(C), (E). A postconviction relief petition must rely on evidence outside the trial record or otherwise raise issues that could not have been raised at trial or on appeal. Res judicata prevents a defendant who was represented by counsel from raising a claim in a postconviction proceeding that was raised or could have been raised at trial or on direct appeal. State v. Szefcyk (1996), 77 Ohio St.3d 93, 96, 671 N.E.2d 233. Causes of Action 1, 2, 4, and 5 (Waiver of Jury Trial).
Otte's first five causes of action concern the waiver of his right to a jury trial, and the subsequent trial to the three judge panel. He alleges that his use of antipsychotic medication invalidated the waiver of his right to a jury trial. The petition and supporting documents present credible evidence that he was given a medication known as Mellaril (thioridazine) prior to and at the time of his June 25, 1992 apparent written waiver and hearing. Otte had a behavioral episode on March 13, 1992, in which he exhibited uncontrollable aggression and that episode culminated in a thorazine injection. On March 17, 1992, Otte was placed on 50 milligrams of Mellaril daily, with the dosage increased to 100 milligrams on April 2, 1992, and to 200 milligrams on June 9, 1992. The jail physician noted his continued erratic behavior during this period, including an inability to sleep, paranoia, and apparent hallucinations, and in a note dated June 26, 1992, just one day after the waiver hearing, he reported that Otte was seeing eyes and hearing voices.
Otte also provided the reports of pharmacologist Dr. Charles Kandiko and psychologist Dr. Franklin Hurt, Jr. who both opined that his use of Mellaril raised serious questions concerning his competence; Dr. Kandiko stated that the drug itself was likely to render Otte incompetent because of its sedative effects in quelling psychotic behavior, and Dr. Hurt stated that the prescription of Mellaril indicated that Otte was suffering from an active psychosis that itself probably rendered him incompetent.
Dr. McPherson, who interviewed Otte in June 1992, made no mention of medication in her testimony during the penalty phase of the trial and it is unclear whether she knew of his medication and found it not worth mentioning, or if she was unaware of it when she assessed his mental condition. Such questions are appropriate for an evidentiary hearing.
To be valid, a jury waiver must be voluntary, knowing and intelligent. State v. Bays (1999), 87 Ohio St.3d 15, 19, 716 N.E.2d 1126, 1134. Otte's written waiver is presumptively knowing, intelligent, and voluntary, and he has the burden of showing otherwise. Id. We agree that Otte's remaining jury waiver related causes of action were properly dismissed because they assert allegations that could have been made from the trial record itself and are res judicata, or because Otte has failed to attach any supporting evidence that would rebut the presumption of valid waiver. We interpret the opinion that denied these claims to be based upon the conclusion that the petition is insufficient to rebut the presumption of validity, and thus shows that Otte is not entitled to relief on these claims.
We agree that cause of action five, alleging that Otte's trial lawyers were ineffective because they failed to inform him of his rights and the consequences of his waiver, and those portions of causes of action two and four that make similar claims, were properly dismissed because he did not attach any relevant supporting affidavits or evidence to his petition. Otte does not allege by affidavit that his trial lawyers failed to give him proper information concerning his waiver, or that he was unable to understand the information given. We also find that the remaining parts of causes of action two and four were properly dismissed, but for a different reason. The actions are barred by res judicata to the extent that they claim that the judge did not inform Otte of his constitutional rights and the effect of his waiver. Such claims are cognizable from the trial record and could have been raised and argued on direct appeal without resort to evidence outside the record.
We disagree, however, with the conclusion that Otte's medication claim can be analyzed with the remainder of his claims concerning the validity of his jury waiver. A defendant's use of medication while awaiting and during trial can raise constitutional issues of fundamental fairness and ineffective assistance of counsel. See, e.g., Bouchillon v. Collins (C.A.5, 1990), 907 F.2d 589 (failure to investigate incompetency and insanity pleas ineffective when evidence suggested their possibility and no other defense was available). Otte has attached evidence that supports this claim and reasonably could present sufficient evidence rebutting the presumption of a valid waiver.
Furthermore, although the evidence was available and could have been raised at trial, Otte has alleged that his lawyer was ineffective when he failed to raise the claim. An ineffective assistance of counsel claim is not barred by res judicata, as the ineffectiveness necessarily prevents raising the claim at trial. In effect, a defendant is not considered represented by counsel for purposes of the ineffective assistance claim. Cf. Szefcyk, supra. Moreover, this claim could not have been raised on appeal, because the evidence of Otte's medication is not in the trial record. Otte, therefore, has raised a viable claim that his medication interfered with his ability to make a valid jury waiver. Because the petition, records, and files do not show Otte's lack of entitlement to relief, it was error to fail to schedule an evidentiary hearing on Otte's first cause of action. We therefore affirm the judgment with respect to causes of action nos. 2, 4, and 5, but reverse the judgment and remand for an evidentiary hearing with respect to cause of action no. 1.
Cause of Action No. 3 (Untimeliness and Failure to Record the Waiver).
Otte claims that the three judge panel had no jurisdiction to hear his case, because his written jury waiver was never recorded with the court. We noted that the journal entry recording his waiver was not filed until September 22, 1992, although trial occurred on September 16, 1992. Recording a defendant's written jury waiver pursuant to R.C. 2945.05 is necessary before the three-judge panel has jurisdiction to hear the case. State v. Pless (1996), 74 Ohio St.3d 333, 658 N.E.2d 766, paragraph one of the syllabus. The Plesscourt also stated, however, that the issue may be remedied only on direct appeal. Id., paragraph two of the syllabus. Because the issue can be waived and the presence or absence of the waiver form would be apparent in the trial record, res judicata bars Otte from raising it here. We also note that this court has rejected motions to re-open direct appeals raising this issue where the direct appeal occurred prior to the Pless decision, finding that an appellate lawyer is not ineffective for failing to anticipate Pless and raise the issue. See, e.g., State v. Robertson (Nov. 13, 1998), Cuyahoga App. No. 56330, Motion No. 94405, unreported (rejecting motion to re-open and citing other cases reaching same result). We affirm the dismissal with respect to the third cause of action.
Causes of Action Six through Nine (Entitlement to Expert Evidence Concerning Otte's Cocaine and Alcohol Use and Intoxication at the Time of the Offenses).
Otte claims that his lawyers were ineffective for failing to retain pharmacological and psychological experts to present evidence concerning the effects of his alcohol and cocaine use at a hearing to suppress his confession, as well as at both the guilt and penalty phases of trial, either as an insanity defense, a defense to the intent elements of the offenses, or in mitigation. Both Dr. Kandiko and Dr. Hurt addressed his cocaine and alcohol use, and both opined that, based on his self-reported drug and alcohol use, Otte would have been seriously impaired at the time of the offenses and the confession. The judge denied these claims (as well as cause of action no. 10, discussed infra), stating that the issues were neither discussed nor brought to the Court's attention during trial. We interpret the judge's opinion as a denial on res judicata grounds.
The res judicata issue presented is slightly complicated by the fact that, although Otte's drug abuse and the lack of any expert testimony dealing with it was on the record available for direct appeal, the expert opinions necessary to show ineffective assistance of counsel were not. In order to prove ineffective assistance of counsel, a petitioner must show that his lawyer's conduct fell below reasonable professional standards, and that he was prejudiced thereby. Prejudice is shown if the petitioner establishes a reasonable probability that competent representation would have affected the outcome of his trial. Strickland v. Washington (1984),466 U.S. 668, 687-94, 104 S.Ct. 2052, 2064-68, 80 L.Ed.2d 674, 693-698; State v. Johnson (2000), 88 Ohio St.3d 95, 108, 723 N.E.2d 1054, 1067.
Otte could not argue that his lawyers unreasonably failed to obtain and present expert evidence without first establishing that such evidence would have helped his cause. Therefore, even though these issues could be identified by a lawyer on direct appeal, they could not be raised on direct appeal because further investigation and evidence was necessary. Otte could not raise these claims on direct appeal without the opinions presented in the postconviction petition; therefore causes of action nos. 6, 7, 8, and 9 are not barred by res judicata. Because the State has not argued any alternative reason to affirm the judgment as to these causes of action,[1] we reverse the judgment and remand for an evidentiary hearing with respect to causes of action nos. 6, 7, 8, and 9. Cause of Action No. 10 (Failure to Request Competency Hearing in Light of Antipsychotic Medication).
As noted supra, the judge considered this claim res judicata, stating that it had not been raised at trial. We address this cause of action separately because, unlike the previous causes of action, the trial record does not even fairly indicate that Otte was using antipsychotic medication. Therefore, unlike causes of action six through nine, a lawyer on direct appeal might not even recognize the existence of an issue, much less whether it could be raised on direct appeal. The evidence of Otte's use of Mellaril is outside the trial record, as is the expert evidence concerning its effects.
The State has offered an alternative reason for denying this claim, arguing that the expert opinions are insufficient because they speak only to the general effects of Mellaril, and there is no evidence that Otte personally experienced those effects. We reject this rationale because there is no reason to believe, on the evidence presented, that Otte's experiences under the influence of Mellaril would be different from those generally observed. Drs. Kandiko and Hurt opined that Otte would have and did experience the same effects Mellaril generally induces. We reverse the judgment and remand for an evidentiary hearing as to cause of action no. 10. Cause of Action No. 11 (Failure to Investigate, Discover, and Present Evidence of Psychosis for Mitigation Purposes).
The eleventh cause of action is similar to the tenth, but claims ineffective assistance with respect to the penalty phase rather than the guilt phase. Otte claims here that his use of antipsychotic medication necessarily implied evidence of psychosis or other mental defect that reasonably should have been investigated and presented during the penalty phase of his trial. We agree that the petition and supporting documents are sufficient to warrant an evidentiary hearing on this claim. Reasonable investigation is a critical component of competent representation, and the prejudicial failure to conduct reasonable investigation is ineffective assistance. Strickland, 466 U.S. at 690-91,104 S.Ct. at 2066, 80 L.Ed.2d at 695.
It appears the judge denied the eleventh cause of action for insufficient evidence. The judge denied causes of action nos. 11 through 15 as a group, stating that all of these claims failed because they imposed unreasonable standards of ineffective assistance, requiring the lawyer to be one who could see into the future to determine whether or not the defendant has post-trial serious psychological defects that would later, after the verdict, be relevant to the defense presented at trial. Although this statement appears to have some application to cause of action no. 15, we are nonplused as to its relevance to any other claim.
The eleventh cause of action raises an issue concerning Otte's mental state at the time of his offenses, as well as prior to and during trial. The evidence presented indicated that investigation of Otte's jail records would have uncovered his aberrant behavior and medication. Whether the failure to investigate and discover this information was unreasonable is a matter for further evidentiary presentation and argument, and as already noted, it is unclear whether the lawyers and court-appointed psychologist had this information but found it unimportant or were unaware of its existence. Pursuant to Bouchillon and Strickland, however, the postconviction petition shows that Otte could be entitled to relief, and thus merits an evidentiary hearing on this issue. We reverse the judgment and remand for an evidentiary hearing with respect to cause of action no. 11.
Cause of Action No. 12 (Presentation of Inconsistent Arguments and Incoherent Strategy During Penalty Phase).
Otte's twelfth cause of action continues his claims that his trial lawyers provided ineffective assistance during the penalty phase of his trial. The only new claim added by this cause of action, however, is that the two defense lawyers made conflicting, inconsistent statements in their closing arguments at the penalty phase. This claim is barred by res judicata, because its substance is derived from the trial record, and required no outside evidence for its presentation and argument on direct appeal. Therefore, we affirm the dismissal of cause of action no. 12.
Cause of Action No. 13 (Failure to Present Expert Evidence of Intoxication During Penalty Phase).
This cause of action presents the same essential facts and arguments as those made in nos. 6, 7, 8, and 9, with respect to Otte's confession and the guilt phase of trial. For the same reasons discussed in our resolution of those claims,[2] we reverse the judgment and remand for an evidentiary hearing with respect to cause of action no. 13.
Cause of Action No. 14 (Failure to Present Mitigation Evidence Supplied in Pre-trial Report).
Otte claims here that his trial lawyers were ineffective during the penalty phase because they failed to present witnesses and evidence suggested in a report compiled by a court-appointed mitigation expert. He appended portions of the report to his petition, as well as the affidavits of his trial lawyers, both of whom admitted that their files did not contain a copy of the report. Patrick D'Angelo, Otte's lead trial lawyer, averred that he did view the report and discuss its contents with the mitigation expert, but stated that he determined that it did not contain any evidence that would aid Otte's case, and chose not to present any of the evidence or information at either stage of trial. Otte challenges this, in part by attaching a list of possible witnesses from the report, and by attaching a list of the report's contents, which states that it contains approximately sixteen letters written on Otte's behalf, and approximately twenty-five interview summaries with potential witnesses.
In addition to stating that this cause of action placed unreasonable duties on the trial lawyers to see into the future, the judge also stated, apparently in reference to this cause of action, that:
 The mitigation hearing along with the mitigation expert was quite voluminous and thorough. (See record). The three-judge panel appropriately weighed all the evidence and arrived at a just verdict.
Although this part of the opinion apparently refers to Otte's fourteenth cause of action, we are not convinced that it shows an actual consideration of the claim and supporting evidence. There is little dispute on the record that the mitigation expert submitted far more information than was presented at trial and the judge's opinion makes no attempt to assess the question presented; whether Otte's trial lawyers made a reasonable choice to forgo presenting any information from the mitigation expert's report at trial. The judge's reference to the panel's weighing of the evidence also fails to address Otte's claim, because Otte does not argue that the panel inappropriately weighed the evidence presented, but challenges the evidence his lawyers chose to present.
The State argues that we can affirm the dismissal of this claim because it is barred by res judicata, and that a postconviction court is absolutely barred from finding ineffective assistance of counsel in matters of trial strategy or tactics. We first reject the res judicata claim, because even though the State correctly points out that a similar issue was addressed by the Ohio Supreme Court on direct appeal, that court did not have access to the mitigation expert's report, and did not address the issue with respect to the evidence available to Otte's counsel. Otte, 74 Ohio St.3d at 566, 660 N.E.2d at 721-22.
We next address the contention that, because D'Angelo asserted that he reviewed the material and decided not to present it, this claim presents an unreviewable issue of trial tactics. While reviewing courts should be wary of second-guessing a lawyer's trial strategy, Strickland,466 U.S. at 689-90, 104 S.Ct. at 2065-66, 80 L.Ed.2d at 694-95, this does not, as the State suggests, make such a decision immune from all scrutiny. The postconviction judge must simply assess the reasonableness of the lawyer's actions viewed as of the time of counsel's conduct. Id. The record here does not show us a lack of entitlement to relief on this claim. Otte provided evidence showing that the mitigation expert had compiled much more extensive information than the lawyers used. Regardless of D'Angelo's statement that he reviewed and rejected the information, Otte is entitled to have a judge review the evidence presented, as well as further evidence and argument presented at a hearing, to determine whether this tactical decision was objectively reasonable. We reverse the judgment and remand for an evidentiary hearing with respect to cause of action no. 14. Cause of Action No. 15 (Request that the Postconviction Court Hear Evidence of Mitigating Circumstances Arising Subsequent to Sentence).
In this cause of action, Otte encouraged the postconviction judge that evidence of his successful adjustment to prison after conviction and sentencing could be used to mitigate his offense and overturn the sentence of death. He makes the same argument to us on appeal, encouraging this court that it is an independent sentencer authorized to hear and weigh any and all evidence and render a new sentence without regard to that originally imposed. The judge's opinion concerning future events seems aptly directed at this cause of action alone, although he purported to apply the same reasoning to the four preceding claims as well.
Otte relies on R.C. 2929.05 and Lockett v. Ohio (1978), 438 U.S. 586,98 S.Ct. 2954, 57 L.Ed.2d 973, for the propositions that this court may enter a new sentence and that evidence of his adjustment to prison life is admissible in mitigation. While R.C. 2929.05 does provide for de novo appellate review of death penalty decisions, this does not mean that we are entitled to disregard the trial proceedings, because this would constitute a de novo trial, rather than de novo review. When we act as an appellate body, we review only that evidence presented to the judge. Similarly, the judge hearing the postconviction petition was without authority to hear new evidence in mitigation unless Otte could claim that evidence should have been presented at trial but, through no fault of his, was not, or that the evidence showing his actual innocence of the crime could not have been discovered and presented at trial. Even if Otte argued that the new evidence would show his actual innocence of the death penalty, see, e.g., Sawyer v. Whitley (1992), 505 U.S. 333,112 S.Ct. 2514, 120 L.Ed.2d 269, we would not find that Lockett requires judges to re-assess death sentences based on mitigating evidence that did not exist at the time sentence was passed, and therefore could not have been discovered. Subsequent evidence is irrelevant to determining whether the sentence was justified at the time it was imposed. Requests for clemency based on such evidence must be addressed to the executioner, not the judge. Although evidence of Otte's adjustment to prison life in existence at the time of trial would be admissible in the penalty phase, we are unconcerned with subsequent evidence of this character. There was no error in dismissing cause of action no. 15.
Cause of Action No. 18 (Cumulative Effect of Errors).
The judge necessarily denied this claim because his denial of all of Otte's seventeen prior claims precluded the recognition of a cumulative effect due to the other claimed errors. Because we have reinstated nine of Otte's causes of action, his claim of prejudice due to cumulative errors is also reinstated. We reverse the judgment and remand for an evidentiary hearing with respect to cause of action no. 18.
We also note that Otte requested that this court order that he be allowed to conduct discovery on his claims prior to the evidentiary hearing. The conduct and scope of pretrial discovery is a matter for the judge's initial resolution, and we will not enter any preemptive or prescriptive orders.
We find Otte's first assignment of error well-taken in part, reverse the judgment and remand for an evidentiary hearing with respect to causes of action nos. 1, 6, 7, 8, 9, 10, 11, 13, 14, and 18.
Otte's second assignment of error states:
 II. OHIO POST-CONVICTION PROCEDURES DO NOT AFFORD AN ADEQUATE CORRECTIVE PROCESS NOR DO THEY COMPLY WITH DUE PROCESS OR EQUAL PROTECTION UNDER THE FOURTEENTH AMENDMENT.
We have remanded this case on the basis of Otte's first assignment of error and find the second assignment of error moot pursuant to App.R. 12(A)(1)(c).
Judgment affirmed in part, reversed in part, and remanded.
It is ordered that the parties shall bear their own costs herein taxed.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TIMOTHY E. McMONAGLE, P.J. CONCUR; JAMES D. SWEENEY, J. CONCURS IN JUDGMENT ONLY WITH SEPARATE CONCURRING OPINION.
[1] There is some question concerning the credibility of Otte's claims of intoxication, an issue that might prevent or limit the effectiveness of those claims. We find, however, that this issue has not been adequately presented or argued before us, and thus refuse to uphold the dismissal on this basis. The issue can be argued and addressed on remand.
[2] And with the same caveat concerning the credibility of Otte's self-reported intoxication at the time of the offenses.